791 P.2d 653

**Bonita J. LYNCH, Petitioner–Appellee,**

v.

**Donna L. LYNCH, Personal Representative of the Estate of Michael S. Lynch, Respondent–Appellant.**

**No. 1 CA–CV 88–240.**

Court of Appeals of Arizona, Division 1, Department D.

April 24, 1990.

J. Douglas McVay, Phoenix, for respondent-appellant.

Fogel and Lamber by Dennis M. Lamber and Kenneth J. Love, Phoenix, for petitioner-appellee.

## OPINION

FIDEL, Judge.

A man who won the lottery before the pending dissolution of his marriage seeks to reverse the trial court's grant of half his winnings to his wife. We hold that the winnings were community property and affirm. In the course of our decision, we reexamine the "will to union" doctrine of *In re Marriage of Fong*, 121 Ariz. 298, 589 P.2d 1330 (App.1978).

## FACTS

Michael Lynch (husband) and Bonnie Lynch (wife) were married in 1968. Their only child was born in 1971. The couple separated in 1985, and within a year husband began living with a woman named Donna Williams. Wife filed for dissolution shortly after.

Wife's petition was uncontested, and at a default hearing on February 10, 1987, wife testified that the marriage was irretrievably broken. *See* A.R.S. § 25–312(3). A decree of dissolution is ordinarily entered at the conclusion of a default hearing. However, on February 10, the trial court took the matter under advisement and, on February 19, vacated the hearing because husband had received untimely notice.[1]

---

1. Wife's counsel had mistakenly notified husband that the default hearing was scheduled for February 9. After recognizing the mistake, counsel sent a corrected notice that February 10 was the hearing date. This second notice, however, was delivered on February 4, and did not give husband the full notice that our rules require. Written notice of a default hearing must be provided "at least three days prior to the hearing." Rule 55(b)(2), Arizona Rules of Civil Procedure. Weekends, holidays, and the date of delivery are excluded pursuant to Rule 6, Arizona Rules of Civil Procedure. February 4 was the excluded date of delivery, the 7th and 8th were excluded weekend days, and the 9th was an excluded holiday. This left only February 5

On February 21, husband and Donna Williams won a $2.2 million jackpot in the Arizona State Lottery. Each owned half a share of the winning ticket. Wife then filed an amended petition in the unconcluded dissolution seeking half of husband's share. This time husband answered, the case went on to trial, and in the ultimate decree of dissolution the trial court awarded wife half of husband's lottery share.

Husband has appealed the trial court's ruling on three grounds.[2] By each argument, he attempts to establish that the parties acquired no community property after February 10, 1987, when the invalid default hearing was held. First, he argues that a marital community lasts only as long as the parties' "will to union" and that these parties' will to union had ended by the time of wife's testimony on February 10 that the marriage was irretrievably broken. Second, he argues that, by this testimony, wife waived her community interest in his future acquisitions. Last, he contends that, because wife's lawyers gave untimely notice of the February 10 hearing, wife is estopped from denying that the marital community ended on that date.

We consider each argument in turn.

## COMMUNITY DURATION

When an Arizona spouse acquires an asset before marital dissolution, Arizona law treats the asset as community property unless it falls within one of several statutory exceptions. This "bright line" rule is established by A.R.S. § 25–211, which provides: "All property acquired by either husband or wife *during the marriage,* except that which is acquired by gift, devise or descent, is the community property of the husband and wife." (Emphasis added.) A marriage endures in Arizona—and thus the acquisition of community property continues—"until the final dissolution is ordered by the court." *Flowers v. Flowers,* 118 Ariz. 577, 580, 578 P.2d 1006, 1009 (App.1978).

In some jurisdictions, acquisition of community property ceases when spouses begin to live "separate and apart." *See, e.g.,* Cal.Civ.Code § 5118 (Deering 1984); *In re Marriage of Baragry,* 73 Cal.App.3d 444, 140 Cal.Rptr. 779 (1977). *See also* Wash. Rev.Code Ann. § 26.16.140 (1986). In Arizona, however, demarcation by decree "avoids the factual issue of when the couple began living apart, and provides appropriate treatment for the on-again-off-again manner in which some couples try to resolve their differences and patch up their marriages." Effland, *Arizona Community Property Law: Time for Review and Revision,* 1982 Ariz.St.L.J. 1, 10–11.

An Arizona couple that wishes to end the acquisition of community property before (or without) dissolution has a statutory means to do so. A.R.S. § 25–313(B) provides for entry of a decree of legal separation that terminates "community property rights and liabilities ... as to all property, income and liabilities received or incurred after [its] entry." In the absence of a decree of legal separation, however, acquisition of community property continues in Arizona until the decree of dissolution is filed. A.R.S. § 25–211; *Jurek v. Jurek,* 124 Ariz. 596, 597, 606 P.2d 812, 813 (1980); *Flowers v. Flowers,* 118 Ariz. at 580, 578 P.2d at 1009.

## WILL TO UNION

No legal separation decree was entered in this case, and the parties' marriage had not ended when husband won the lottery. Husband's lottery share was not "acquired by gift, devise or descent"[3]; thus, it

---

and 6, which did not constitute the three days prior notice specified by the rules.

**2.** Husband died on October 30, 1989, during the pendency of this appeal. Donna L. Lynch, his personal representative, was substituted as appellant pursuant to Rule 27(a), Arizona Rules of Civil Appellate Procedure. We will refer in this opinion to husband's arguments, though they are now maintained by his personal representative.

**3.** At trial, husband argued that his half of the winning lottery ticket was a gift from Donna Williams and, accordingly, not community property. The trial court made a factual finding to the contrary, and husband has not pursued this argument on appeal.

qualifies as a marital community asset pursuant to A.R.S. § 25–211. Husband argues, however, that the trial court should have found that his marital community ended when the spouses' "will to union" ended—at a point before he won the lottery and no later than wife's testimony on February 10 that the marriage was irretrievably broken.

■ The will to union doctrine derives from Spanish community property law and contributed to this court's resolution of *In re Marriage of Fong*, 121 Ariz. 298, 589 P.2d 1330 (App.1978). As summarized by *Fong*, "Spanish community property law would declare that property acquired after the 'union of wills' has ceased would not be considered community property...." *Id.* at 304, 589 P.2d at 1336.

Though *Fong* employed the will to union rationale to equitably resolve a hard and unusual case, *Fong* stopped short of importing the doctrine wholesale into Arizona law. To explain the narrow standing of the doctrine in Arizona, we review *Fong*'s facts and disposition in detail.

### The Facts of Fong

Alfonso Fong married Ngan Woon Chow Fong in China in 1923. The couple lived together only briefly before Alfonso began a series of travels that led him eventually to the United States. During a brief reunion in China, the couple conceived a child, John Fong, who was born in 1936. When Alfonso returned to the United States, he attempted to bring his family over, but was frustrated by the onset of the Second World War. In 1946, Alfonso was misinformed that Ngan had died. The following year he married Lily Fong and brought John to live with them in Phoenix. During a 1957 trip to China, Alfonso met Ngan, but she concealed her identity and was introduced as his late wife's sister. In 1972, John Fong brought Ngan to this country, and Alfonso finally learned that she was still alive. By then Alfonso and Lily had seven children and had accumulated considerable property. 121 Ariz. at 300–01, 589 P.2d at 1332–33.

Ngan initiated dissolution proceedings, and the trial court awarded her $800 per month in spousal maintenance, but held that she was equitably estopped from claiming a marital community share in the property Alfonso had accumulated over the years. *Id.* at 300, 304, 589 P.2d at 1332, 1336. The court of appeals found equitable merit in this ruling, but concluded that the theory of estoppel had not been pled or raised at trial. *Id.* at 302, 589 P.2d at 1334. The court pressed the will to union doctrine into service, however, to achieve a similar result. *Id.* at 304, 589 P.2d at 1336.

### What Fong Did and Did Not Decide

The *Fong* court significantly chose not to decide whether the will to union concept was incorporated into Arizona's statutory definition of community property as property "acquired ... during the marriage." The court thus deliberately avoided holding that Alfonso and Ngan had ceased to acquire community property when their will to union ended and before their marriage was judicially dissolved. 121 Ariz. at 304 n. 1, 589 P.2d at 1336 n. 1.

■ Instead, the court assumed that the assets in question were community property of Alfonso and Ngan. *Id.* It then examined the trial court's power to divide these assets unequally between the parties. The source of this power was A.R.S. § 25–318(A), which requires the trial court to "divide the community ... property ... *equitably*, though not necessarily in kind." 121 Ariz. at 303, 589 P.2d at 1335, quoting A.R.S. § 25–318(A) (emphasis added). Equitable division normally imports an equal division. *See, e.g., Hatch v. Hatch*, 113 Ariz. 130, 133, 547 P.2d 1044, 1047 (1976); *Styers v. Superior Court*, 161 Ariz. 477, 479, 779 P.2d 352, 354 (App.1989). However, "equitable and equal allocation are not synonymous.... The court may depart from equal division ... where equity requires." *Styers*, 161 Ariz. at 479, 779 P.2d at 354.

There were ample reasons for unequal division in *Fong*. As a law review note explains:

Alfonso's good faith belief in Ngan's death, combined with her perpetuation of that belief through deception and lack of contact with Alfonso, could be construed as an abandonment. Following this abandonment, approximately $250,000.00 worth of real property was accumulated through the mutual efforts of Lily and Alfonso. Since this property was not earned through the mutual efforts of the community of Alfonso and Ngan, denying Ngan an equal share of the property earned by Alfonso and Lily would have been appropriate.

Note, *A New Dimension in Arizona Community Property Law*, 22 Ariz.L.Rev. 131, 133–34 (1980).

The equitable claims of the juridical marital community of Alfonso and Ngan contrasted sharply with those of the putative marital community of Alfonso and Lily, and the contrast was tailor-made for the will to union rationale, described in *Fong* as follows:

> [I]t was the mutual loyalty, the mutual sharing of the burdens of marriage, the joint industry and labor of the spouses to further and advance the success and well-being of the marriage and of the family, which entitled them to share in the profits.

121 Ariz. at 303, 589 P.2d at 1335, *quoting* W. de Funiak & M. Vaughn, *Principles of Community Property* § 57 (2d ed.1971).

The *Fong* court did not formally adopt the will to union doctrine into Arizona law. Yet it employed the quoted rationale to support its conclusion that the trial court had equitable power under A.R.S. § 25–318 to award Alfonso all of the property accumulated after his putative marriage to Lily.[4]  121 Ariz. at 304, 589 P.2d at 1336.

### Application of Fong

■ Does *Fong* apply to the case before us? To answer, we must first address the question reserved by *Fong*: Our domestic relations statute defines community property as property "acquired ... during the marriage." A.R.S. § 25–211. Does marital duration, for the purpose of this statute, depend upon the spouses' will to union? We hold that it does not. We have previously commented in the "Community Duration" section of this opinion that a marital community endures in Arizona until a final dissolution is ordered by the court. This rule of demarcation by decree is incompatible with a doctrine that measures community duration by a standard so elusive as the spouses' will to union.

■ We next consider the viability of will to union as a factor in property allocation pursuant to A.R.S. § 25–318. More particularly, we consider whether Arizona courts may base the allocation of community property upon consideration of the quality or duration of spouses' "mutual loyalty ... [or] mutual sharing of the burdens of marriage." *Fong*, 121 Ariz. at 303, 589 P.2d at 1335. We do not interpret *Fong* as importing these considerations into property distribution under A.R.S. § 25–318. Though not an absolute requirement, "substantial equality" of distribution is the general rule in Arizona. *Sample v. Sample*, 152 Ariz. 239, 242, 731 P.2d 604, 607 (App. 1986); *Lee v. Lee*, 133 Ariz. 118, 121, 649 P.2d 997, 1000 (App.1982). A trial court may depart from equal division to remedy financial misconduct such as "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of ... property held in common." A.R.S. § 25–318(A). However, the court must otherwise proceed "without regard to marital misconduct." *Id.* Expansive inquiry into the quality or duration of the spouses' will to union would disrupt this statutory scheme.

The *Fong* court emphasized that its holding was tailored to the unusual facts before it, and no Arizona opinion has discussed the will to union doctrine in the intervening eleven years. *Fong* involved abandonment, assumed death, and a longstanding and productive putative marriage. It may have been appropriate under such circumstances

---

4. The court also affirmed spousal maintenance for Ngan and instructed the trial court upon remand to award Ngan a substantially equal share of property acquired before the second marriage. 121 Ariz. at 305, 589 P.2d at 1337.

to consider that the parties' marriage was an empty shell, but it would be mischievous to Arizona's statutory scheme to give the will to union doctrine wider sway. We hold that *Fong* is limited to its facts.

Comparable facts are not presented by this case. This marriage ended, as many do, over a period of months, while the parties talked sporadically and unsuccessfully of reconciling. There is nothing in such facts, or in husband's contemporaneous involvement with another woman, to bring the will to union doctrine into play.[5] Nor were will to union considerations activated by wife's testimony on February 10 that the marriage was irretrievably broken. Whatever the parties' feelings on that date, their marriage did not end until a court decreed that it was over. These parties were still married when husband won the lottery on February 21, and we find no basis in the will to union doctrine to deny the wife her share.

## WAIVER

Husband makes the related argument that wife waived any interest in his further acquisitions on February 10 when she testified that the marriage was irretrievably broken, expecting a decree of dissolution to issue on that date. We disagree. Waiver is the "intentional relinquishment of a known right." *Northern Ariz. Gas Serv. v. Petrolane Transp.*, 145 Ariz. 467, 476, 702 P.2d 696, 705 (App. 1984). Wife surely waived her interest in husband's acquisitions beyond the dissolution of their marriage, but her waiver went no further. She did not relinquish what might accrue to the marital community if the marriage lasted beyond its anticipated end.

5. We note, however, that even if the will to union doctrine were routinely considered in equitable division, there would be a reasonable basis for the trial court to determine that the parties' will to union lingered through the dissolution in this case. The parties separated in early 1985, but continued to discuss reconciliation through and beyond July of 1986, when wife petitioned for dissolution of their marriage. In November of 1986, husband called on wife to arrange his release from jail. Wife posted bail, brought him clothes, and took him to her home. When asked why she would go through this, wife said: "[B]ecause whenever he is in trouble he calls me always. And because I've taken care of him for 22 years." As late as March of 1987, after the aborted default hearing and husband's lottery win, wife assisted husband in a medical emergency, checked him into an alcoholic rehabilitation program, and agreed to join him in family counseling.

## ESTOPPEL

Husband next argues that wife is estopped from asserting an interest in his lottery winnings because he was "justified in believing that he would be divorced on February 10 and his acquisition of his interest in the winning lottery ticket must be considered in that light." We disagree.

First, though wife's counsel gave husband defective notice, nothing in the record suggests that they did so for tactical advantage. Wife and her counsel came to the February 10 hearing in apparent good faith, attempting to dissolve the marriage on that date. The trial court acted prudently and in husband's best interest by withholding a decree until he had received the notice that the law required.

Second, the record does not establish that husband acquired his interest in the winning ticket in reliance on his marriage ending on February 10. To the contrary, husband played the lottery weekly for twenty years or more before his jackpot; he shared tickets weekly with Donna Williams while they lived together, though his marriage was unended at the time. An essential element of estoppel is justifiable reliance. *Heltzel v. Mecham Pontiac*, 152 Ariz. 58, 61, 730 P.2d 235, 238 (1986). That element is wholly lacking in this case.

## ATTORNEY'S FEES

Wife seeks attorney's fees pursuant to A.R.S. § 12-349, claiming that husband's appeal was unjustified or abusive. We disagree. Though the appeal is unsuccessful, the facts were unique and the law uncertain. Husband raised legitimate issues and prompted reexamination of *Fong* and the will to union doctrine. We must be

careful in administering § 12–349 and similar statutes not to discourage the assertion of fairly debatable positions. Wife's request for attorney's fees is denied.

## CONCLUSION

This case displays the hand of chance. Fortune favored husband with a jackpot, but, because his marriage had not ended, fortune dealt his wife a share. Though the lottery was a windfall, spouses marry for better or for worse and share no less in windfalls than in labor's wages. Husband claims that his marriage ended equitably, though not formally, before the winning ticket was acquired. We have given our reasons for rejecting his arguments. The judgment of the trial court is affirmed.

GERBER and NELSON, JJ., concur.

NOTE: The Honorable MICHAEL C. NELSON, Apache County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.