885 P.2d 178

**Robert E. LONG, II, Plaintiff–Appellee,**

v.

**ARIZONA BOARD OF PARDONS AND PAROLE; Charles Ryan, Defendants–Appellants.**

**No. 1 CA–HC 94–0005.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 8, 1994.

Robert E. Long, II, in pro. per. plaintiff-appellee.

Grant Woods, Atty. Gen. by Gordon S. Bueler, Asst. Atty. Gen., Phoenix, for defendants-appellants.

## OPINION

FIDEL, Presiding Judge.

Robert E. Long, II, an inmate at the Arizona State Prison Complex ("ASPC") in Winslow, brought the underlying habeas corpus proceeding to challenge the termination of his community release status and return to prison confinement. The State of Arizona appeals from the trial court's conclusion that Long was denied due process and the trial court's order that Long be returned to community release.

### I.

In November of 1991, Long received a five year prison term. Upon application to the Arizona Department of Corrections ("ADOC"), he was accepted into shock incarceration, a boot camp and community release program "designed to divert youthful offenders from future criminal activity." Ariz.Rev. Stat.Ann. ("A.R.S.") § 41–1604.08(I)(2). In April of 1992, Long completed boot camp, achieved community release, and signed an agreement to abide by certain conditions of supervision, one of which prohibited his use of controlled substances.

On December 21, 24, and 28, 1992, Long's urine tested positive for amphetamine. His

parole supervisor had Long arrested and transported to ASPC–Perryville, where Long signed a waiver of his probable cause hearing.

On February 2, 1993, Long was notified that an Institutional Classification Committee ("ICC") hearing was scheduled for February 9. The notice provided the following general list of possible subjects for the hearing:

> transfer to a higher/lower degree of security/custody within the institution, transfer to another institution, changes in work, training or treatment programming assignments, change of your parole eligibility classification to a lower/higher class and/or review of your provisional release eligibility status.

The record does not reflect whether the ICC hearing was held, but on February 20, 1993, Long was transferred to ASPC–Winslow. On March 12, 1993, Long filed a complaint form questioning why he had not yet received his parole revocation hearing.

On June 23, 1993, Long filed a Petition for a Writ of Habeas Corpus with the Superior Court in and for Navajo County. More than eight months later, on March 2, 1994, the trial court issued a Writ of Habeas Corpus to the ASPC–Winslow warden, requiring Long to be brought before the court.[1]

On March 16, 1994, a continued hearing date, the Navajo County sheriff's office transported Long to the superior court, but no ADOC representative appeared. After confirming that the warden had been served with the writ, petition, and notice of the hearing, the court proceeded in the State's absence. Finding that Long had not knowingly waived his probable cause or revocation hearing and that Long was incarcerated

without a finding of probable cause, the court ordered ADOC to return him to community release.

The State initially moved for reconsideration, but on April 15, 1994, before the trial court resolved that motion, the State filed this appeal.

## II.

The State first argues that Long waived his probable cause hearing. Second, it argues that, because he was only entitled to a probable cause hearing, no further hearing was required. Third, it argues that, even if Long was entitled to some form of a hearing, the trial court exceeded its jurisdiction in bypassing such a hearing and ordering Long returned to community release.

■ We review the issuance of a Writ of Habeas Corpus for abuse of discretion by the issuing court. *Salstrom v. State,* 148 Ariz. 382, 384, 714 P.2d 875, 877 (App.1986).

### A. Procedural Due Process Right to Hearings

■ Parole, though not an unqualified liberty, is sufficiently "within the protection of the Fourteenth Amendment" to require an informal hearing for one whose parole is being revoked. *Morrissey v. Brewer,* 408 U.S. 471, 482–84, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972). The hearing requirement serves to assure that any revocation is "based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484, 92 S.Ct. at 2602. Both a preliminary and revocation hearing are required.[2] *Id.* at 485–87, 92 S.Ct. at 2602–03.

---

1. The record does not explain the trial court's long delay in granting the initial Writ of Habeas Corpus and holding an evidentiary hearing. A far more expedited hearing process is contemplated by A.R.S. § 13–4124(A): "[I]f it appears that the writ ought to issue, [the court] shall grant it without delay."

2. Minimum due process requirements for a revocation hearing include:
 (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard

in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604.

The shock incarceration program allows convicted persons to serve 120 days in a rigorous and intensive program and to complete their sentence on supervised community release or intensive probation. A.R.S. §§ 41–1604.08, 13–915(E). While in the program, an "offender waives any other form of release" and is not subject to parole board review. *See* A.R.S. § 41–1604.08(A)(10).

The shock program contains two distinct categories of participants, court ordered and ADOC admitted. When a court commits an offender to the program, both boot camp and community release are aspects of probation, and the court retains jurisdiction to decide what consequences result from any violation of the conditions of community release. A.R.S. § 13–915. By contrast, when, as here, ADOC admits an offender to the program, ADOC retains supervision of the offender on community release through ADOC parole officers. A.R.S. § 41–1604.08(C), (F).

 The State asserts that an ADOC supervised offender, as an *administrative* releasee, is not entitled to the same level of process as a parole violator. We disagree. The due process requirements outlined in *Morrissey* apply to supervised release by any "administrative agency," whether an arm of the court or the executive. 408 U.S. at 480, 92 S.Ct. at 2600. The liberty interests of offenders on community release from shock incarceration are identical to those that *Morrissey* identified for parolees: gainful employment, association with family, and the ability to form enduring attachments. *See id.* at 482, 92 S.Ct. at 2600–01. Therefore, even though shock release is outside the normal parole system, once an offender has earned community release through successful completion of the boot camp, that offender has a qualified liberty interest in remaining on community release and is entitled to due process. *See id.* at 480–82, 92 S.Ct. at 2600–01.

 Due process requirements are satisfied for court ordered shock participants through the medium of arraignment and a probation violation hearing before the court.

But the record does not establish whether equivalent protection is provided to shock participants under the supervision of ADOC. Such participants are offered a probable cause hearing.[3] But whether they are also offered a revocation hearing is unclear.

Section 41–1604.08(D) provides three grounds for reclassification or termination from the shock program:

> An inmate *who fails to complete the shock incarceration program, who is administratively terminated from the program or who violates any condition of supervision* shall be reclassified to serve the unexpired term of his sentence as ordered by the sentencing court.

(Emphasis added). The first ground, failure to complete, is statutorily defined as termination following "an administrative hearing." A.R.S. § 41–1604.08(I)(1). The statute, however, does not address whether a hearing is also required for administrative termination or for termination based on violation of supervisory conditions.

 The State argues that any violation of supervisory conditions requires immediate removal from the program. This argument is undercut, however, in two respects. First, there is no such presumption in the statute governing court supervised shock incarceration as a condition of intensive probation. To the contrary, when a court supervised probationer violates a term of his probation, the probation officer submits a recommendation, and the court determines the appropriate disposition. *See* A.R.S. § 13–915(F). The court has discretion to return a court supervised offender to shock incarceration. *Id.* Such discretion belies the assertion that removal must be an automatic response to any violation.

Second, in the very "Conditions of Supervision" that ADOC supervised participants must sign when entering community release, ADOC retains discretion to reinstate a violator in the program. Specifically, the participant agrees, "If I fail to abide by any of these conditions of supervision, I am aware

---

**3.** When a parole officer suspects that an ADOC supervised offender has violated the conditions of release, that officer issues an arrest warrant. The offender, once taken into custody, is afforded a probable cause hearing, though the hearing may be waived.

that I *may* be returned to an institution...." (Emphasis added). An ADOC supervised offender thus enters community release with the expectation that the department will exercise discretion over disposition of a violation. And under *Morrissey,* before such discretion is exercised, the offender is entitled to be heard. 408 U.S. at 484, 92 S.Ct. at 2601–02.

### B. Long's Due Process Rights

The State argues that the superior court abused its discretion in finding that Long had not knowingly waived his probable cause hearing. Long does not dispute the point. The day Long was taken to ASPC–Perryville, he was served with a copy of the arrest warrant and an acknowledgement of service/waiver form, which Long signed in two places. The waiver described Long's right to a probable cause hearing and the procedures for that hearing. Just below this description, Long made an "X" and initialed a box next to a boldly printed **"WAIVER OF PRELIMINARY/PROBABLE CAUSE HEARING"** statement reading as follows:

> I wish to waive my preliminary/probable cause hearing. This statement is no[t] to be used or considered as an admission of guilt or for any other purpose. If on a Board approved release, this waiver does not affect my right to a Revocation hearing by the Arizona Board of Pardons and Paroles.

Long acknowledges that, via this form, he knowingly waived a probable cause hearing. Long's acknowledgement does not end our inquiry, however, because he also maintains that he never waived his right to a revocation hearing.

■ To waive a constitutional right, one must act voluntarily, knowingly, and intelligently. *In re Maricopa County Juvenile Action No. JT9065297,* 181 Ariz. 69, 73, 887 P.2d 599, 603 (App.1994). "Waiver is the 'intentional relinquishment of a known right.'" *Lynch v. Lynch,* 164 Ariz. 127, 132, 791 P.2d 653, 658 (App.1990) (citation omitted). There is nothing in the waiver form quoted above that sought or accomplished Long's intentional relinquishment of his right to a *revocation* hearing. Indeed, because

nothing in the form advised Long whether he was on a "Board approved release," the form had the contrary tendency to suggest that a revocation hearing would follow. We therefore find that Long did not knowingly waive his due process right to a revocation hearing.

### C. Proper Relief

We turn to the State's argument that the trial court exceeded its authority by ordering return to community release. We agree in two respects.

■ First, the court erred by employing a Writ of Habeas Corpus in this case. An Arizona court may only employ such a writ on behalf of a prison inmate to order the party "discharged from custody or restraint." A.R.S. § 13–4131. Habeas Corpus is not the appropriate means to order something less than "absolute release." *Escalanti v. Department of Corrections,* 174 Ariz. 526, 527 n. 1, 851 P.2d 151, 152 n. 1 (App.1993). It is neither the means to relieve a prisoner claiming miscalculation of parole eligibility, *id.,* nor the means to relieve a prisoner denied access to the courts. *Salstrom v. State,* 148 Ariz. 382, 384, 714 P.2d 875, 877 (App.1986).

■ What Long sought from the superior court was not discharge from custody but transfer from one type of custody to another—from inmate status to community release. Community release, like parole, "is in legal effect imprisonment." *Mileham v. Arizona Bd. of Pardons and Paroles,* 110 Ariz. 470, 472, 520 P.2d 840, 842 (1974). Because Arizona statutes do not grant a superior court Habeas Corpus power to change the nature of a prisoner's custody, A.R.S. § 13–4132; *see Salstrom,* 148 Ariz. at 384, 714 P.2d at 877, the trial court erred by wielding a Writ of Habeas Corpus to order Long's transfer back to community release.

This does not mean that the court lacked power to rule on Long's petition. "[W]here extraordinary relief (special action) is available, [a] court may grant the appropriate relief even though the writ applied for was not properly drawn." *Salstrom,* 148 Ariz. at 384, 714 P.2d at 877. Thus, the proper vehi-

cle in this case was to treat the petition as a special action.

We would not remand, of course, merely to correct a formal misnaming of the proper medium of relief. But the court also erred in a more substantive way. If ADOC failed to provide Long a revocation hearing, the proper remedy was to order such a hearing. To take the further step, jump the hearing, and order community release was to exercise authority that the trial court did not have.

In fairness to the trial court, we acknowledge the complexity of the procedural issues in this case, and we recognize that the trial court's job was made more difficult by ADOC's failure to appear. For the reasons set forth above, however, we vacate the superior court's order returning Long to community release. We further hold that Long is entitled to a revocation hearing. We therefore direct the court on remand to determine whether Long was afforded such a hearing, and if so, whether that hearing fulfilled Long's due process rights. If no hearing was held, or the hearing was constitutionally deficient, the trial court, treating this matter as a special action, shall require a hearing consistent with this decision and the requirements set forth in *Morrissey.*

GRANT and GERBER, JJ., concur.