T.C. Memo. 1999-218


UNITED STATES TAX COURT


DANIEL F. LAYMAN, II, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos.    15189-97, 15190-97, Filed July 2, 1999.
               15191-97.


James Benham, for petitioner.

Pamelya P. Herndon and Andrew J. Horning, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HAMBLEN, Judge:  Respondent determined deficiencies and additions to tax with regard to petitioner's 1991, 1992, and 1993 Federal income tax liabilities as follows:

|       |            | Additions to Tax Under Internal Revenue Code Sections | |
|-------|------------|----------|----------|
| Year  | Deficiency | 6651(a)  | 6654(a)  |
| 1991  | $2,974.00  | $619.75  | $139.39  |
| 1992  | 12,553.00  | 3,138.25 | 547.45   |
| 1993  | 2,546.00   | 636.50   | 106.65   |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by both parties,[1] the issue for decision is whether respondent can use section 66(b) to disregard the application of Arizona's community property laws in calculating petitioner's 1991, 1992, and 1993 income tax liability. Petitioner did not file an income tax return for taxable years 1991, 1992, or 1993. Respondent mailed statutory notices of deficiency to petitioner at his last known address for the taxable years 1991, 1992, and 1993, on April 14, 1997. Respondent determined petitioner's income tax liability based on a single filing status with one personal exemption, without

---

[1]Petitioner has conceded the following assignments of error. First, that his filing status for the taxable years 1991, 1992, and 1993 shall be married filing separately. Second, that he received taxable unemployment compensation in the amount of $4,810 in 1993. Third, that he is liable for additions to the tax under secs. 6651(a) and 6654(a) for the taxable years 1991, 1992, and 1993, in amounts which will be determined based on the outcome of these cases.

Respondent has conceded that petitioner shall be allowed to claim two exemptions in taxable year 1992: One for himself, and one for his son, Daniel F. Layman III.

making any adjustment to petitioner's unreported income for Arizona's community property law. The notices of deficiency fail to mention community property law, section 66(b), or facts which would allow respondent to invoke section 66(b). Petitioner lodged income tax returns with respondent for the taxable years 1991, 1992, and 1993, on September 15, 1997, as joint returns, claiming six exemptions for 1991 and 1992 and four exemptions for 1993.

## FINDINGS OF FACT

This case was submitted without a trial pursuant to Rule 122. The stipulation of facts and accompanying exhibits are incorporated herein by this reference.

Daniel F. Layman, II, petitioner, resided in Phoenix, Arizona, on the date the petitions in these cases were filed. Petitioner was married to Margaret A. Layman (Peggy Layman) at all times from January 1, 1991, through December 31, 1993, inclusive. Petitioner and Peggy Layman were calendar year taxpayers. There were four children born of the marriage between petitioner and Peggy Layman.

During the calendar years 1991, 1992, and 1993, petitioner and Peggy Layman lived separate and apart. Petitioner and Peggy Layman did not enter into a written agreement of separation at

any time prior to December 31, 1993.  Petitioner and Peggy Layman were divorced in taxable year 1994.[2]

During the calendar years 1991, 1992, and 1993, petitioner was a resident of Phoenix, Arizona.  Arizona is a community property state.  Peggy Layman was never a resident of Arizona in the calendar years 1991, 1992, or 1993.  Peggy Layman was a resident of Bailey, Colorado, during calendar year 1991, and from January through July 1992.  From August 1992 through December 1993, Peggy Layman was a resident of Grafton, West Virginia. Colorado and West Virginia are not community property states.

During the calendar year 1991, petitioner received taxable wages in the amount of $25,380 from GTE Health Systems, Inc. Petitioner also received taxable wages in the amount of $9,855 from Mark F. Johnson, Inc. during 1991.  During the calendar year 1992, petitioner received taxable wages in the amount of $60,414 from GTE Health Systems, Inc.  During the calendar year 1993, petitioner received taxable wages in the amount of $18,202 from GTE Health Systems, Inc., and taxable unemployment compensation in the amount of $4,810.  Petitioner did not inform Peggy Layman

---

[2]We note that both petitioner and Peggy Layman filed for divorce in 1994, and that the record contains two separate dissolutions of marriage.  On Sept. 20, 1994, the marriage was dissolved in civil action number DR 94-06121 in the Superior Court of the State of Arizona, in and for the County of Maricopa. On Sept. 26, 1994, the marriage was dissolved in civil action number 94-D-56 in the Circuit Court of Taylor County, West Virginia.

of the total amount of income he received during calendar years 1991, 1992, and 1993.

Peggy Layman earned wages of $1,660 in 1991, $4,724 in 1992, and $18,821 in 1993.

During calendar year 1991, petitioner made 15 separate wire transfers to Peggy Layman totaling $10,800, as follows:

| Date | Amount |
|------|--------|
| 1/3 | $500 |
| 1/7 | 2,000 |
| 1/25 | 950 |
| 2/8 | 1,000 |
| 2/26 | 1,200 |
| 4/5 | 1,500 |
| 5/10 | 105 |
| 8/16 | 150 |
| 8/22 | 500 |
| 9/9 | 305 |
| 9/20 | 500 |
| 10/9 | 600 |
| 11/18 | 500 |
| 12/6 | 300 |
| 12/13 | 500 |
| 1991 Total | $10,610[3] |

The $10,800 was deposited into checking account No. 2046133 held at the Mountain Valley National Bank in Conifer, Colorado. In addition, petitioner sent two checks to Peggy Layman in October 1991, one for $200 and one for $500, written on petitioner's checking account held at First Interstate Bank in Phoenix,

---

[3]We note that the parties stipulated that the total wire transfers for 1991 is $10,800. This difference is immaterial to the outcome of the cases.

Arizona. These wire transfers and checks were for Peggy Layman's support and the support of their three youngest children.

During the calendar year 1992, petitioner made 24 separate wire transfers to Peggy Layman totaling $10,915, as follows:

| Date | Amount |
|------|--------|
| 1/9 | $505 |
| 1/27 | 505 |
| 2/13 | 505 |
| 2/21 | 505 |
| 3/10 | 505 |
| 3/23 | 500 |
| 4/6 | 505 |
| 4/15 | 205 |
| 4/17 | 505 |
| 5/5 | 505 |
| 5/18 | 505 |
| 6/11 | 505 |
| 7/10 | 500 |
| 7/27 | 750 |
| 8/21 | 750 |
| 8/28 | 360 |
| 9/16 | 270 |
| 9/18 | 430 |
| 10/9 | 350 |
| 10/15 | 350 |
| 11/17 | 350 |
| 11/25 | 350 |
| 12/10 | 350 |
| 12/23 | 350 |
| 1992 Total | $10,915 |

Part of the $10,915 was deposited into checking account No. 2046133 held at the Mountain Valley National Bank in Conifer, Colorado, and part was deposited into checking account No. 0873733 held at the Community Bank & Trust in Grafton, West

Virginia. These funds were for Peggy Layman's support and the support of their three youngest children.

In addition, petitioner sent two checks to Peggy Layman during the calendar year 1992, one for $600 for his son's graduation and one for $350 for the support of his wife and their two youngest children. Both of these checks were written on petitioner's checking account held at First Interstate Bank in Phoenix, Arizona.

During the calendar year 1993, petitioner made seven wire transfers to Peggy Layman totaling $2,700, as follows:

| Date | Amount |
| --- | --- |
| 1/12 | $350 |
| 1/21 | 400 |
| 2/4 | 550 |
| 2/18 | 350 |
| 3/12 | 350 |
| 3/18 | 350 |
| 3/31 | 350 |
| 1993 Total | $2,700 |

The $2,700 was deposited into checking account No. 0873733 held at the Community Bank & Trust in Grafton, West Virginia. These funds were for Peggy Layman's support and the support of their two youngest children.

Petitioner and Peggy Layman had signature authority on checking account No. 2046133 held at the Mountain Valley National Bank in Conifer, Colorado. Petitioner did not write any checks

on account No. 2046133 held at Mountain Valley National Bank in Conifer, Colorado, in the taxable years 1991, 1992, and 1993.

OPINION

Married persons who reside in a community property State are generally each required to report one-half of their community income for Federal income tax purposes. See United States v. Mitchell, 403 U.S. 190 (1971); Drummer v. Commissioner, T.C. Memo. 1994-214, affd. without published opinion 68 F.3d 472 (5th Cir. 1995). Petitioner contends that under Arizona law, his 1991, 1992, and 1993 income is community income and that he is required to report and be taxed on only one-half of that community income for Federal tax purposes.

On brief, respondent relies solely on the provisions of section 66(b) to deny petitioner the income-splitting benefits of Arizona's community property law. Section 66(b) provides:

> The Secretary may disallow the benefits of any
> community property law to any taxpayer with respect
> to any income if such taxpayer acted as if solely
> entitled to such income and failed to notify the
> taxpayer's spouse before the due date (including
> extensions) for filing the return for the taxable
> year in which the income was derived of the nature
> and amount of such income.

I.  Nature of Petitioner's Income

The law of the State where the acquiring spouse is domiciled at the time applies to determine whether the property is community property or not. See Restatement (Second) Conflict of Laws sec. 258 comment (c) (1971), as cited in the Arizona case of

In re Martin, 752 P.2d 1026 (Ariz. Ct. App. 1986). Petitioner resided in Phoenix, Arizona, throughout the years 1991, 1992, and 1993. Arizona is a community property state. Peggy Layman resided in Colorado until August 1992 and resided in West Virginia thereafter. Colorado and West Virginia are not community property states.

In Arizona, all property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, is community property of the husband and the wife. See Ariz. Rev. Stat. sec. 25-211 (West Supp. 1998); Guerrero v. Guerrero, 502 P.2d 1077 (Ariz. Ct. App. 1972). The marital community continues to exist in Arizona until the spouses receive a divorce or a decree of legal separation. See Jurek v. Jurek, 606 P.2d 812, 813 (Ariz. 1980); Lynch v. Lynch, 791 P.2d 653, 655 (Ariz. Ct. App. 1990). Moreover, the marital community continues to exist even when the spouses are living separate and apart. See id.

Petitioner and his wife lived separate and apart during the calendar years 1991, 1992, and 1993. During the 3-year period from 1991 through 1993, there was no written agreement of separation between petitioner and his wife. Petitioner and his wife were not divorced until the taxable year 1994.

Generally, under the community property laws of the State of Arizona, the income petitioner received in 1991, 1992, and 1993,

is considered community property.  See <u>Goodell v. Koch</u>, 282 U.S. 118 (1930); <u>Beall v. Commissioner</u>, 82 T.C. 70 (1984).  Under the law of Arizona, the physical separation of petitioner and Peggy Layman did not alter the community character of petitioner's post-separation earnings in 1991, 1992, and 1993.  Consequently, since petitioner and Peggy Layman were not legally separated, the community property laws of Arizona apply to petitioner's earnings for the taxable years 1991, 1992, and 1993.

II.  <u>Application of Section 66(b)</u>

Section 66(b) authorizes the Commissioner to disallow the benefits of any community property law to a taxpayer with respect to any income if (1) the taxpayer acted as if solely entitled to such income, and (2) the taxpayer failed to notify the taxpayer's spouse of the nature and amount of such income before the due date for filing the return.  See <u>Mischel v. Commissioner</u>, T.C. Memo. 1997-350; <u>Schramm v. Commissioner</u>, T.C. Memo. 1991-523, affd. without published opinion 988 F.2d 121 (9th Cir. 1993).

Where a notice of deficiency fails to describe the basis on which the Commissioner relies to support a deficiency determination and that basis requires the presentation of evidence that is different from that which would be necessary to resolve the determinations that were described in the notice of deficiency, the Commissioner will bear the burden of proof

regarding the new basis.  Shea v. Commissioner, 112 T.C. 183 (1999).

Here, the relevant issues raised by respondent's notices of deficiency for petitioner's failing to file include: Petitioner's unreported income, the filing status of petitioner, the number of exemptions petitioner is allowed, and the related additions to tax.  The notices of deficiency fail to mention community property law, section 66(b), or facts which would allow respondent to invoke section 66(b).  Since the notices of deficiency do not describe section 66(b) as respondent's basis for disallowing the benefits of community property law to petitioner, and different evidence will be necessary to resolve the section 66(b) issue, respondent must bear the burden of proof regarding application of section 66(b).  See Shea v. Commissioner, supra.

Respondent contends that the following facts demonstrate that petitioner acted as if he were solely entitled to the income.  First, respondent posits that petitioner had complete control and dominion over his income for the taxable years 1991, 1992, and 1993.  Second, respondent alleges that the fluctuation in the amounts petitioner sent to his former spouse for her support and the support of their children in 1991, 1992, and 1993, is further indication that petitioner acted as though he were solely entitled to the income.  Third, respondent alleges

that there is no evidence to show that petitioner was under a court order to pay any part of his earnings to his former wife for her support or for the support of their children.

The facts on which respondent relies, either taken alone or taken together, do not justify the conclusion that petitioner acted as if he were solely entitled to the income.  Respondent, first and foremost, asserts that an examination of the entire record in this case demonstrates that petitioner had complete control and dominion over his income for the taxable years 1991, 1992, and 1993.  Respondent alleges that the following facts illustrate petitioner's control and dominion over the income.  During 1991 and the first 7 months of 1992, petitioner maintained signature authority over the bank account in Conifer, Colorado, where petitioner deposited money for his children's support and the support of his wife.  Therefore, even though petitioner deposited funds in an account for Peggy Layman to use for her support and the support of her children, petitioner still maintained the ability to remove every dollar that he deposited in the account.  If he chose to, petitioner could have deposited the funds one day and reclaimed them the next day.

Respondent's allegations miss the mark.  Even though petitioner's name was left on the bank account at Mountain Valley National Bank in Conifer, Colorado, used exclusively by his wife during 1991 and 1992, there is not one check or withdrawal made

by petitioner during any of the 3 years in this case. Respondent has not cited any instance in which petitioner actually exercised control over the funds he transferred. Rather, during 1991 and 1992 Peggy Layman exercised sole dominion and control over the funds transferred to the joint account in Conifer, Colorado. Furthermore, when Peggy Layman moved to West Virginia in 1992, she opened her bank account without petitioner having any interest in the account.

Moreover, the record is replete with evidence that petitioner did not act as if he were solely entitled to the income in 1991, 1992, and 1993. During 1991, 1992, and 1993, petitioner provided substantial income for the benefit of the marital community. Petitioner transferred substantial funds to his wife for her support and the support of their three youngest children in 1991 and in 1992. During calendar year 1991, petitioner received taxable wages in the amount of $35,235. During calendar year 1991, petitioner made 15 separate wire transfers to Peggy Layman totaling $10,800. In addition, petitioner sent two checks to Peggy Layman during calendar year 1991, totaling $700. During calendar year 1992, petitioner received taxable wages in the amount of $60,414. During calendar year 1992, petitioner made 24 separate wire transfers to Peggy Layman totaling $10,915. In addition, petitioner sent two checks to Peggy Layman during calendar year 1992, one for $600 for his

son's graduation and one for $350 for the support of his wife and their two youngest children.

During calendar year 1993, petitioner received taxable wages in the amount of $18,202 and taxable unemployment compensation in the amount of $4,810. During calendar year 1993, petitioner made seven wire transfers to Peggy Layman totaling $2,700 for the support of his wife and their two youngest children. Consequently, petitioner provided a substantial portion of the net income for the benefit of Peggy Layman and their dependent children during 1991, 1992, and 1993.

Respondent also alleges that the fluctuation in the amounts petitioner sent to his former spouse for her support and the support of their children in 1991, 1992, and 1993, is further indication that petitioner acted as though he were solely entitled to the income. Respondent places too much emphasis on the fact that petitioner determined the amount of money, if any, that he would send to Peggy Layman for her support and the support of their children. Petitioner consistently sent funds to his wife throughout 1991, 1992, and 1993. Petitioner sent Peggy Layman 15 wire transfers in 1991 throughout 9 months, 24 wire transfers in 1992 throughout all 12 months, and 7 wire transfers in 1993 during the first 3 months of 1993.

During 1991, petitioner sent Peggy Layman $3,450 in January, $2,200 in February, and $1,500 in April; from August through

December, petitioner sent Peggy Layman approximately $500 to $805 a month for her support and the support of their dependent children. It is likely that petitioner sent larger amounts of support during the first few months of 1991 because he and Peggy Layman were newly separated and she needed time to establish herself and obtain work, as she only earned $1,660 in wages during 1991.

During 1992, petitioner sent approximately $1,000 per month from January through August and then $700 per month from September through December. During 1993, petitioner sent his wife $750 to $1,050 per month from January through March. It is likely that petitioner became unemployed around this time as he only earned $18,202 in 1993 and collected $4,810 in unemployment compensation. Furthermore, Peggy Layman earned $18,821 in 1993, as compared to $4,724 in 1992, and $1,660 in 1991. Consequently, the fluctuations over the 3-year period may be accounted for and do not diminish the fact that petitioner provided substantial support for his wife and dependent children during this 3-year period. Moreover, since petitioner sent consistent, substantial funds to his wife for her support and for their children's support, the fluctuation of these funds does not demonstrate that petitioner acted as if solely entitled to his income.

Respondent further alleges that there is no evidence to show that petitioner was under a court order to pay any part of his

earnings to his former wife for her support or for the support of their children.  Respondent is certainly correct that petitioner was not under a court order to pay child support and alimony during the 3-year period; however, this fact does not establish that petitioner acted as if he were solely entitled to his income.  Respondent recognizes that it is fortunate petitioner chose to send support payments to his former spouse even though he was not under a legal obligation to do so.  By choosing to send substantial funds to his wife for her support and the support of their dependent children, petitioner did not act as though he were solely entitled to the income during 1991, 1992, and 1993.

III. Conclusion

Since we have determined that petitioner did not act as if he were solely entitled to the income, we hold that respondent cannot use section 66(b) to disregard the application of Arizona's community property laws in calculating petitioner's 1991, 1992, and 1993 income tax liability.

To reflect the foregoing,

Decisions will be entered

under Rule 155.