78 P.3d 1051

Buster JOHNSON, Plaintiff–Appellant,

v.

MOHAVE COUNTY, a body politic, Pete Byers, Thomas Stockwell, as members of the Board of Supervisors, Mohave County, Arizona, and Lake Havasu City, a municipal corporation of the State of Arizona, Defendants–Appellees.

No. 1 CA–CV–03–0072.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 14, 2003.

Harvey R. Jackson, Lake Havasu City, Attorney for Plaintiff–Appellant.

William J. Ekstrom, Jr., Mohave County Attorney, by John White, Deputy County Attorney, Kingman, Cookson & Ingram by Susan Ingram, Lake Havasu City, Attorneys for Defendants–Appellees.

## OPINION

HALL, Judge.

¶ 1 Buster Johnson appeals from the summary judgment in favor of Lake Havasu City, Mohave County, Pete Byers, and Thomas Stockwell (collectively, appellees) and from the trial court's award of attorneys' fees against him pursuant to Arizona Revised Statutes (A.R.S.) section 12–349 (1992). We have jurisdiction pursuant to A.R.S. § 12–2101(B) (1994).

¶ 2 The issues on appeal are:

1. Is an intergovernmental agreement (IGA) made pursuant to A.R.S. §§ 11–932(A), –933(A) (2001) subject to the public auction requirement of A.R.S. § 11–256 (2001) or, alternatively, the unanimous con-

sent exception in A.R.S. § 11–251(9)(2001)?[1]

2. Did Johnson bring his claim "without substantial justification," thereby entitling appellees to an award of attorneys' fees pursuant to § 12–349?

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 The relevant facts are undisputed. Mohave County (County) entered into a lease agreement with the Bureau of Land Management (BLM) in 1974, providing the County with a leasehold interest in the Special Activities Recreational Area (SARA Park) and requiring that the land be used for public recreational purposes. In July of 2000, the City of Lake Havasu (City) transmitted a proposal to the Mohave County Board of Supervisors (Board), delineating an IGA between the City and County regarding the development, management, and maintenance of the SARA Park area.

¶ 4 The terms of the proposed IGA provided that the City would pay for all capital improvements and operational expenses incurred in the development and maintenance of SARA Park, as well as supply remuneration to the County consisting of a five-thousand-dollar yearly base payment and ten percent of all fees collected from park users. In exchange, the County would abide by and maintain its present leasehold interest and give the City a right of first refusal to enter into a new lease with BLM upon the expiration of the County BLM lease. At the time the 2000 proposal was presented to the

---

1. For ease of reference, the relevant portions of these statutes are set forth below.

§ 11–251:

The board of supervisors, under such limitations and restrictions as are prescribed by law, may:

....

9. Sell at public auction, after thirty days' previous notice given by publication in a newspaper of the county, stating the time and place of the auction, and convey to the highest bidder, for cash or contract of purchase extending not more than ten years from the date of sale and upon such terms and conditions and for such consideration as the board shall prescribe, any property belonging to the county that the board deems advantageous for the county to sell.... When the property for sale is real property, the board shall have such property appraised by a qualified independent fee appraiser.... The appraiser shall establish a minimum price, which shall not be less than ninety per cent of the appraised value. The notice regarding the sale of real property shall be published in the county where the property is situated ... and shall contain, among other things, the appraised value, the minimum acceptable sale price, and the common and legal description of the real property. Notwithstanding the requirement for a sale at public auction prescribed in this paragraph, a county may with unanimous consent of the board, without public auction, sell or lease any county property for a specific use to any solely charitable, social or benevolent nonprofit organization incorporated or operating in this state.

§ 11–256:

A. The board may lease or sublease, for a term not to exceed twenty-five years plus an option to renew for an additional period not exceeding twenty-five years, any land or building owned by the county or under the control of the county.

....

C. Such land or building shall be leased or subleased at a public auction to the highest responsible bidder, provided that the amount of bid is at least ninety per cent of the rental valuation as determined by the appraiser, and subject to such other terms and conditions as the board may prescribe.

....

E. This section shall be construed as supplementary to and not in conflict with other statutes governing or regulating powers of boards of supervisors.

§ 11–932:

A. Notwithstanding the ten-year [sic] limitation prescribed in § 11–256, a county or municipality may purchase, enter into contracts to purchase, acquire by lease or sublease and lease or sublet for any term, or obtain by gift or accept by grant from the United States or other governmental agency real property within or without its territorial limits, and may hold, maintain and improve it for the use and purpose of a public park, and it may dedicate property already owned to a like purpose. A county or municipality may enter into contracts for any term for the operation of any such public parks. A county or municipality may expend public funds for improvements on lands dedicated, or acquired by lease or sublease for any term, or by agreement or contract of purchase, under the provisions of this section.

§ 11–933:

A. The governing body of a county or municipality may enter into a cooperative agreement with the United States, a state, the governing body of another county or municipality, or a private legal entity, within or without the state, for the establishment, development, maintenance or administration of a public park.

County, Johnson was a member of the Board and expressed his intent to vote against the proposed IGA. The Mohave County Attorney advised the Board that the IGA was, in effect, a sublease for which unanimous consent by the Board was required in the absence of a public auction. Consequently, the proposal was defeated because there was not unanimous consent.

¶ 5 Approximately two years later, the City submitted another proposal, entitled "INTERGOVERNMENTAL AGREEMENT FOR THE MANAGEMENT MAINTENANCE AND IMPROVEMENT OF PUBLICLY OWNED RECREATION FACILITIES," that contained nearly identical provisions to the earlier proposal. The Board approved the IGA, with recently-elected supervisors Byers and Stockwell voting in favor of the agreement and Johnson voting against it. Objecting to the "majority-rule" procedure employed, Johnson filed a lawsuit seeking a declaration that the IGA entered into between the County and City was effectively a lease governed by A.R.S. §§ 11–251(9), –256 (2001), requiring appraisal and public auction or unanimous consent by the Board.

¶ 6 The original complaint, in which Johnson sought both a declaratory judgment that the IGA was unenforceable and special action relief preventing the County from implementing the IGA, named only the County and supervisors Byers and Stockwell as defendants. However, the trial court sua sponte joined the City as an indispensable party to the proceedings. See Ariz. R. Civ. P. 21. On cross-motions for summary judgment,[2] the trial court entered summary judgment on behalf of the appellees. In its final order, the trial court also awarded attorneys' fees of $4,500 and $2,105 to the County and City, respectively.

2. The County filed a motion to dismiss pursuant to Arizona Rule of Civil Procedure 12(b)(6), in which the City joined. However, because it considered and relied on exhibits attached to the pleadings, the trial court deemed the County's motion to dismiss as a motion for summary judgment. See Frey v. Stoneman, 150 Ariz. 106, 109, 722 P.2d 274, 277 (1986).

## DISCUSSION

### I. The County was not required to hold a public auction before entering into the cooperative agreement

¶ 7 In reviewing a summary judgment in a case involving undisputed material facts, we independently review the trial court's application of the law to the facts. *Canady v. Prescott Canyon Estates Homeowners Ass'n*, 204 Ariz. 91, 92, ¶ 6, 60 P.3d 231, 232 (App. 2002).

¶ 8 This case presents an issue of statutory interpretation. Johnson, characterizing the agreement between the County and the City as a lease, relies primarily on §§ 11–251(9) and –256 to support his argument that *all* leases or subleases of county property must, absent a unanimous vote of the board of supervisors, be put up for public auction. *See Davis v. Hidden*, 124 Ariz. 546, 548, 606 P.2d 36, 38 (App.1979) (holding that the board of supervisors possesses only those powers expressly conferred by statute or necessarily implied therefrom). Appellees claim that the agreement is not a lease but rather a cooperative agreement to develop, maintain, and administer a public park as authorized pursuant to §§ 11–933(A) and –952(A).[3]

¶ 9 On their face, the relevant statutes could be construed to support Johnson's claim. For example, § 11–256(A) generally authorizes the county to "lease or sublease ... any land or building owned by or under the control of the county[,]" but § 11–256(C) additionally requires that such property "shall be leased or subleased at a public auction to the highest bidder." According to Johnson, the only exception to the public auction requirement is the provision in § 11–251(9) that allows a county to "lease any county property to any other duly constituted governmental entity" without a public auction if the board unanimously consents.

3. In relevant part, § 11–952(A) provides: "If authorized by their legislative or other governing bodies, two or more public agencies by direct contract or agreement may contract for services or jointly exercise any powers common to the contracting parties and may enter into agreements with one another for joint or cooperative action...."

Therefore, even though § 11–932, which authorizes a county or municipality to acquire "by lease or sublease" real property "from the United States or other governmental agency ... for the use and purpose of a public park," does not specifically require a public auction, Johnson argues that § 11–256(C) applies to acquisitions or leases pursuant to § 11–932, subject only to the unanimity exception found in § 11–251(9).

¶ 10 Appellees rely on *Pioneer National Trust Company v. Kirk*, 121 Ariz. 508, 591 P.2d 996 (App.1979) as support for their argument that the agreement is not a lease but rather a cooperative arrangement for the management of a public park pursuant to § 11–933(A). We do not agree that *Pioneer National Trust Company* controls the proper characterization of the agreement in this case. The issue in that case was whether Pima County was authorized to act as an agent for the United States to redeem property from a tax sale, *id.* at 510–11, 591 P.2d at 998–99, not whether a cooperative agreement and a lease agreement are mutually exclusive. Furthermore, as noted by the trial court in this case, the IGA contains provisions that are typically associated with a lease or, in this case, a sublease agreement. For example, the agreement requires the City to assume the County's obligations under its leasehold interest with BLM and grants the City the right to develop and manage SARA Park subject to a yearly fee.

■ ¶ 11 Nonetheless, even assuming that the IGA is properly characterized as part sublease and part cooperative agreement, we conclude that the public auction requirement of § 11–256(C) is inapplicable to acquisitions or leases for public park purposes made pursuant to § 11–932. Our analysis is supported by several rules of statutory construction. First, courts construe seemingly conflicting statutes in harmony when possible. *Steer v. Eggleston*, 202 Ariz. 523, 527, ¶ 16, 47 P.3d 1161, 1165 (App.2002). Second, a statute should be construed in conjunction with other statutes that relate to the same subject or purpose, giving effect to all statutes involved. *Id.* Third, in furtherance of such harmonization, courts should review the history of the various sections in

order to ascertain the intent of the legislature and thereby construe the statutes to further that intent. *State v. Thomason*, 162 Ariz. 363, 366, 783 P.2d 809, 812 (App.1989). After reviewing the history of the relevant statutory scheme, we conclude that the legislature never intended that the acquisition of land for park purposes be subject to the public auction requirement. *See State v. Cornish*, 192 Ariz. 533, 537, ¶ 16, 968 P.2d 606, 610 (App.1998) (holding courts should apply statutory constructions that make practical sense and do not frustrate legislative intent).

■ ¶ 12 As part of its comprehensive statutory compilation in 1939, the Arizona Legislature enacted the precursor to § 11–256, which generally requires that leases involving county property be made at an advertised public auction to the highest bidder. *See* Arizona Code of 1939, § 17–207; Laws 1939, Ch. 9, §§ 1, 2. The legislature's purpose in creating the competitive bidding statute was "to prevent favoritism, fraud and public waste by encouraging free and full competition." *See Mohave County v. Mohave–Kingman Estates, Inc.*, 120 Ariz. 417, 420, 586 P.2d 978, 981 (1978). At the same time, the legislature enacted the predecessor to § 11–932, which authorizes park agreements but does not impose the public auction requirement. *See* Arizona Code of 1939, § 16–1502; Laws 1939, Ch. 78, § 2. The rule that statutes *in pari materia* are to be construed so as to give effect to each, applies with even greater force when the statutes are enacted at the same session of the legislature. *See Ariz. Prop. and Cas. Ins. Guar. Fund v. Ueki*, 150 Ariz. 451, 456, 724 P.2d 70, 75 (App.1986) (stating that statutes enacted by the same legislature are deemed to share the same "public policy underpinnings" and proceeding to construe the statute at issue accordingly); *State v. Jaastad*, 43 Ariz. 458, 462, 32 P.2d 799, 800 (1934).

¶ 13 Section 11–256 governed all leases of land not involving parks until 1981, when the legislature added A.R.S. § 11–256.01 (2001), obviating the need for a public auction for land leased to another governmental entity for a non-park purpose, but containing a public notice requirement that permits mem-

**334**

bers of the public to bid. The addition of this statute, which relaxes but does not eliminate competition for county land leased for any purpose to other governmental entities, further evinces a legislative intent to distinguish between lease agreements that a county enters into with governmental versus private entities.

¶ 14 Furthermore, Johnson's reliance on § 11–251(9) is misplaced. In 1984, the legislature amended § 11–251(9) to provide unanimous board consent as an additional means by which the county may enter into lease agreements without conducting a public auction. Viewed in historical perspective, the unanimity exception simply created yet another option for a county to forego § 11–256's public auction requirement rather than, as contended by Johnson, a means of superimposing a public auction requirement on leases authorized by § 11–932.

¶ 15 Construing all the relevant statutes together, we believe that the intent of the legislature, when it enacted the earlier version of § 11–932 in 1939, was to promote and facilitate the development of public parks by excepting such leases from the public auction requirement in § 11–256. *See Ruth Fisher Elementary Sch. Dist. v. Buckeye Union High Sch. Dist.*, 202 Ariz. 107, 112, ¶ 21, 41 P.3d 645, 650 (App.2002) (holding that specific statutes create exceptions to general statutes; therefore, if a provision of a specific statute is inconsistent with one in a general statute on the same subject, the specific statute controls). Although the relevant statutes have been amended from time to time since the 1939 compilation, with other statutes added, these changes only persuade us that subsequent legislatures have recognized and reaffirmed the original statutory scheme designed to encourage the development of public parks. *See* A.R.S. §§ 11–931 to –941 (2001).

## II. The attorneys' fees award was improper

¶ 16 The trial court awarded attorneys' fees to the City and the County pursuant to § 12–349(A)(1), which mandates an award of fees against a party who brings a claim without substantial justification. A

claim is "without substantial justification" if it "constitutes harassment, is groundless and is not made in good faith." § 12–349(F). Each of these three elements must be present and proven by a preponderance of the evidence, with the absence of even one element rendering the statute inapplicable. *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 555, ¶ 27, 20 P.3d 590, 598 (App. 2001).

¶ 17 Arizona Revised Statutes § 12–350 (1992), which governs attorneys' fees awarded pursuant to § 12–349, requires the trial court to "set forth specific reasons for the award." *State v. Richey*, 160 Ariz. 564, 565, 774 P.2d 1354, 1355 (1989) (holding the trial court's "simple finding" of "frivolous" to be insufficient to justify an award). However, the failure of a party to object to the absence of specific findings constitutes a waiver and the party is precluded from raising on appeal the trial court's lack of compliance with the specificity requirement. *Trantor v. Fredrikson*, 179 Ariz. 299, 301, 878 P.2d 657, 659 (1994).

¶ 18 As in *Trantor*, the trial court in this case did not make the requisite specific findings. In its ruling from the bench granting summary judgment to the appellees, the trial court simply stated that it found the City's request for attorneys' fees to be "meritorious." The final judgment merely recited that it had "previously found that the Plaintiff's Complaint was without substantial justification, that is, it was not filed in good faith and was groundless." Therefore, we must independently review the record under the clearly erroneous standard to determine whether sufficient evidence exists to support the finding of a frivolous claim. *Phoenix Newspapers, Inc. v. Dep't of Corr., Ariz.*, 188 Ariz. 237, 243, 934 P.2d 801, 807 (App.1997); *Trantor*, 179 Ariz. at 301 n. 1, 878 P.2d. at 659 n. 1.

¶ 19 Based on our review of the record, we conclude that Johnson's claim that approval of the IGA required unanimous consent by the Board pursuant to § 11–251(9), even though incorrect, was not "without substantial justification." As demonstrated by the preceding discussion, Johnson's claim raised nonfrivolous issues, the resolution of which

required considerable examination of the relationship between several statutes. Section 12–349 does not provide a basis for an award of attorneys' fees against a party whose unsuccessful claim was, as Johnson's, nonetheless fairly debatable. *See City of Casa Grande,* 199 Ariz. at 556, ¶ 30, 20 P.3d at 599 (upholding the trial court's denial of attorneys' fees in a statutory interpretation case requiring considerable analysis because the unsuccessful party's position was fairly debatable) (citing *Lynch v. Lynch,* 164 Ariz. 127, 132–33, 791 P.2d 653, 658–59 (App. 1990)). Therefore, the award of attorneys' fees was improper.

## CONCLUSION

¶ 20 The IGA, regardless whether it constituted a sublease between the County and the City, was not subject to the public auction requirement of § 11–256. Therefore, the absence of a public auction did not require the unanimous consent of the Board pursuant to § 11–251(9) and the trial court properly granted summary judgment to the appellees. Hence, we affirm the summary judgment, but vacate the trial court's award of attorneys' fees.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and WILLIAM F. GARBARINO, Judge.