993 P.2d 1142

**CITY OF SEDONA, an Arizona municipal corporation, Plaintiff–Appellee,**

v.

**Steven DEVOL and Marye Lou Devol, husband and wife; and J.C. Chisum, Trustee of the Shanti Shan Trust dated March 31, 1994; and Just Hour Trust, LLC, as Trustee of the Shanti Shan Trust dated March 31, 1994, Defendants– Appellants.**

**No. 1 CA–CV 97–0594.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 26, 1999.

Michael G. Goimarac, Jon M. Paladini, Sedona, Attorneys for Plaintiff–Appellee.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Robert V. Kerrick, Brian M. Mueller and Sylvia J. Lett, Phoenix, Attorneys for Defendants–Appellants.

OPINION

FIDEL, Judge.

¶ 1 A governmental body that initiates and abandons condemnation proceedings must, under certain circumstances, pay its adversary's attorneys' fees and costs pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") § 11–972(A). A governmental body that initiates or abandons such proceedings in bad faith must pay its adversary's fees and costs pursuant to the common law established in *State ex rel. Morrison v. Helm,* 86 Ariz. 275, 282, 345 P.2d 202, 206 (1959).

¶ 2 We consider in this appeal an assertion that the City of Sedona abandoned proceedings against appellants when, as part of a compromise agreement with appellants, the City amended its complaint in condemnation to modify the location and amount of their land to be condemned. We also consider appellants' assertion that, by seeking a wider strip of land in its original complaint than it was ultimately willing to accept, the City initiated the condemnation in bad faith. Finding neither an abandonment nor bad faith under the circumstances, we affirm the trial court's denial of appellants' claim for attorneys' fees and engineering costs.

## BACKGROUND

¶ 3 In July 1996, the City of Sedona undertook, pursuant to a consent judgment with the State of Arizona, to improve and expand its sewage treatment and collection system. The consent judgment obliged the City to complete the expansion no later than August 29, 1997, or incur penalties and fines ranging from $1000 to $3000 per day.

¶ 4 To advance this project, the City sought to extend a sewer line along a path that led through the property of appellants Devol. At a City Council meeting on October 8, 1996, Mr. Devol urged the City to route the intended line instead through two existing easements, one adjacent to the northern border of his property, the other adjacent to the western border. Otherwise, he stated, "[i]f the City chooses to condemn my property or any portion of my property, I will resist every inch of the way."

¶ 5 On October 31, 1996, the City made a written offer to buy a fifteen-foot permanent easement over appellants' property. Appellants rejected the request, reiterating that the City should instead use the existing easements.

¶ 6 The City deemed the existing easements inadequate. The northern easement was for ingress and egress, not for utilities. The western easement, a ten foot strip, was of insufficient width, according to engineering studies, to accommodate the project; to

make way within it for a sewer line would require the City to relocate other utilities already there.

¶ 7 After the City completed its engineering studies, the City Council adopted a resolution on November 18, 1996, declaring a need to condemn a fifteen-foot permanent easement across appellants' property. Two days later, the City filed its complaint in condemnation and moved for immediate possession under A.R.S. § 12–1116.

¶ 8 Before its motion for possession could be heard, the City scaled back its position. Informed by appellants that its intended route risked harm to mature trees, the City filed an amended complaint on December 6, 1996, modifying the route and amount of appellants' land to be condemned. In a contemporaneous resolution, the Sedona City Council described the modification as intended to utilize more of the existing ten-foot utility easement along the western border and to "mitigate damage to the Devol Property by avoiding most, if not all, mature trees on said property, thus allowing those trees to remain unaffected by construction."

¶ 9 After further negotiations, the parties reached a compromise agreement. The City filed a second amended complaint, once more modifying the location and amount of land to be condemned; appellants, who had not been required to answer either of the previous amended complaints, stipulated to the final revised route; and on January 27, 1997, the trial court entered an order for immediate possession in favor of the City. The City, as compensation, paid appellants four thousand five hundred and eighty-two dollars ($4,582.00).

¶ 10 Shortly thereafter, appellants moved for an award of attorneys' fees and engineering costs. The trial court denied their motion and entered judgment in favor of the City. The trial court did not purport to act in the exercise of discretion, but rather upon a legal determination that appellants were not entitled to a fee and cost award. We review that legal determination *de novo*, examining both the statutory and common law sources for appellants' claim to fees and costs.

## ABANDONMENT OF PROCEEDINGS

¶ 11 The statutory source of appellants' claim is A.R.S. § 11–972. In pertinent part, A.R.S. § 11–972(A) provides:

The court having jurisdiction of a proceeding instituted by an acquiring agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in such real property, such sum as will reimburse such owner for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees actually incurred because of the condemnation proceedings if either of the following occur:

1. The final judgment is that the acquiring agency cannot acquire the real property by condemnation.

2. The *proceeding is abandoned by the acquiring agency.*

(emphasis added).[1]

¶ 12 The common law source of appellants' claim is *State ex rel. Morrison v. Helm,* where our supreme court stated both a general rule of noncompensability and an exception:

A majority of the cases take the view—in the absence of [a] statute imposing liability—that as the State, in commencing a condemnation proceeding, is exercising a legal right, and since every person owns property subject to the exercise of such right, the damage which he suffers by reason of the institution and prosecution of proceedings subsequently abandoned does not give rise to an action on his part, but is damnum absque injuria. This rule, howev-

---

1. Both parties read A.R.S. § 11–974 as limiting fee and cost awards pursuant to A.R.S. § 11–972(A) to condemnation proceedings initiated and abandoned in the course of projects for which "federal financial assistance is to defray all, or part of, the costs...." *See* A.R.S. § 11–974(A). The parties debate whether any part of the costs of the Sedona sewer extension project was to be federally defrayed within the meaning of the statute. We need not consider the matter of federal funding, however, because we conclude that these condemnation proceedings were not abandoned by the City. In the absence of an abandonment of proceedings, questions of federal funding are immaterial.

er, is subject to the qualification that the condemning party shall have acted in good faith both in instituting and in abandoning the proceedings, and that the proceedings, when instituted, were diligently prosecuted.

86 Ariz. at 282, 345 P.2d at 206; *see also City of Scottsdale v. Paradise Valley Water Co.,* 152 Ariz. 251, 253, 731 P.2d 616, 618 (App. 1986) (condemnee entitled to costs and fees if "condemnor acted in bad faith in instituting or in abandoning the proceedings").

¶ 13 To support their statutory claim, appellants must establish that the City abandoned its condemnation proceedings. To support their common law claim, they must establish that the City either initiated or abandoned its proceedings in bad faith. As the element of abandonment is common to both claims, we first consider whether an abandonment of proceedings happened here.

■ ¶ 14 The parties do not dispute that the City initiated condemnation proceedings to acquire an easement over appellants' property and concluded those proceedings as a whole in a settlement whereby the City achieved an easement over appellants' property. Appellants assert, however, that with each of its two amended complaints, the City abandoned its prior "proceedings" within the statutory meaning of that term. Appellants, in other words, treat each of the City's complaints as a new "proceeding" and an abandonment of the "proceeding" embodied in the past complaint.

¶ 15 There is sufficient ambiguity in the word "proceeding" to permit appellants' argument to be made. BLACK'S LAW DICTIONARY gives two relevant definitions of "proceeding":

> The word may be used synonymously with "action" or "suit" to describe the entire course of an action at law or suit in equity from the issuance of the writ or filing of the complaint until the entry of a final judgment, or may be used to describe any act done by authority of a court of law and

every step required to be taken in any cause by either party....

> Term "proceeding" may refer not only to a complete remedy but also to a mere procedural step that is part of a larger action or special proceeding.

BLACK'S LAW DICTIONARY 1204 (6th ed.1990). These quite different meanings make appellants' argument at least semantically viable, for appellants draw upon the definition that recognizes a single procedural step—here an amended complaint—as a proceeding.

¶ 16 To acknowledge the semantic viability of appellants' argument is not, however, to accept its practical or interpretive validity. Though other courts may have done so,[2] we are reluctant to accept a definition that penalizes a condemnor for reasonably refining its position, adjusting the scope of its demand, and amending its complaint after initiating a condemnation suit. Such steps should ordinarily be encouraged, not deterred.

¶ 17 We have textual, as well as practical, grounds for our decision. We have previously quoted the applicable standards for a fee and cost award set forth in A.R.S. § 11–972(A) and *State ex rel. Morrison v. Helm.* *See supra* ¶¶ 11, 12. The statute begins by referring to "[t]he court having jurisdiction of a proceeding instituted by an acquiring agency to acquire real property by condemnation...." A.R.S. § 11–972(A). The quoted usage of "proceeding" is far more compatible with a definition as an "action" or a "suit" than with a definition as a single procedural step within a suit. Similarly, when *Helm* refers to damages suffered from "the institution *and prosecution* of proceedings subsequently abandoned," *Helm* uses "proceedings" to describe the action as a whole. *Helm,* 86 Ariz. at 282, 345 P.2d at 206 (emphasis added); *see also id.* (proceedings, when instituted, must be "diligently prosecuted").

■ ¶ 18 For the reasons we have mentioned, we reject the assertion that merely by amending its complaint to adjust the scope of

**2.** *See Montgomery County v. McQuary,* 26 Ohio Misc. 239, 265 N.E.2d 812, 814 (Ohio Ct. of Common Pleas 1971) (holding that amendment of condemnor's original complaint to substitute a new and different easement route was tantamount to abandonment of the original proceeding).

its proposed condemnation, a condemnor has engaged in an abandonment of proceedings within the meaning of A.R.S. § 11–972(A) or *Helm.* We do not wish to be categorical, however. The flexibility in the word "proceeding" imparts some flexibility to the notion of abandonment of proceedings. We can envision an amended complaint in condemnation that changes the nature of the action so completely as to amount to a functional, if not procedural, abandonment of the prior action and an institution of a new one in its place.[3] We do not rule out the possibility that such a case, if it arises, might satisfy both the statutory and common law standard of abandonment of proceedings.

¶ 19 This is not such a case. Here, the City originally proposed to condemn a thirty-foot temporary construction easement on appellants' land, and appellants ultimately acceded to that proposal. The City originally proposed to condemn a permanent easement over a fifteen-foot-wide strip along the northern border of appellants' land, and appellants ultimately acceded to that proposal as well. Finally, the City originally proposed to condemn a permanent easement over a fifteen-foot-wide strip running approximately half way down the western border, and ultimately agreed to take a narrower but longer five-foot-wide strip along the entirety of the western border. In scaling its taking back to a five-foot strip, the City met appellants' demand to employ the adjacent ten-foot utility easement as part of the channel for its sewer. But in acceding to the City's condemnation of the five-foot-strip, appellants relinquished their original insistence that the City could meet its need entirely from the ten-foot utility strip.

¶ 20 What occurred, in short, was a compromise, not an abandonment. In a single proceeding that comprised the original complaint, the amended complaints, the negotiations with appellants, and the stipulated judgment, the City pursued its initial objective of acquiring a sewer line easement over appellants' property. The City ended with an alignment reasonably comparable to what it sought from the start.

■ ¶ 21 Finding no abandonment of proceedings, we find that appellants have failed to establish an essential element of a claim to attorneys' fees and costs under A.R.S. § 11–972(A). Accordingly, we uphold the trial court's denial of appellants' statutory claim. At common law, however, a condemnee may recover fees and costs if the condemnor "acted in bad faith in instituting *or* in abandoning the proceedings." *Paradise Valley Water Co.*, 152 Ariz. at 253, 731 P.2d at 618; *see also Helm*, 86 Ariz. at 282, 345 P.2d at 206 ("the condemning party shall have acted in good faith both in instituting and in abandoning the proceedings"). Consequently, we turn to the question whether the proceedings were instituted in bad faith.

### BAD FAITH

■ ¶ 22 Appellants argue that the City acted arbitrarily and in bad faith when it first initiated, then abandoned, an effort to condemn an unnecessarily extensive portion of their land. We have already stated our conclusion that the City's conduct did not constitute an abandonment. Nor in our judgment did it constitute bad faith.

¶ 23 Neither *Helm* nor subsequent decisions have attempted precisely to define what constitutes bad faith or an absence of good faith "in instituting and in abandoning [condemnation] proceedings." *Id.* at 282, 345 P.2d at 206; *see also Whitestone v. Town of South Tucson*, 2 Ariz.App. 494, 496, 410 P.2d 116, 118 (1966). Instead, the case law offers illustrations of that standard as the courts have applied it case by case. *See Helm*, 86 Ariz. at 282, 345 P.2d at 207 (unreasonable delay or failure to diligently prosecute condemnation action may constitute bad faith); *Paradise Valley Water Co.*, 152 Ariz. at 254, 731 P.2d at 619 (dismissal before trial did not constitute bad faith when based on factors

---

**3.** *County of Kern v. Galatas*, 200 Cal.App.2d 353, 19 Cal.Rptr. 348 (1962), may have been seen as such a case. There, in an initial complaint, the condemnor sought to condemn the landowners' oil, gas, and mineral interests in 75.49 acres of land. In its amended complaint, the condemnor sought to condemn only their right of entry on 48.87 acres of the land. *Id.* at 349. The court treated as an abandonment the omission from the amended complaint of any claim to oil, gas, and mineral interests. *Id.* at 350.

indicating condemnation no longer in condemnor's best interests); *Whitestone,* 2 Ariz. App. at 496, 410 P.2d at 118 (bad faith for condemnor to dismiss action if trier of fact assigns property a value unsatisfactory to the condemnor).

 ¶ 24 In considering the City's conduct, we recognize that a condemnor may act in bad faith by arbitrarily initiating condemnation proceedings for land unnecessary for public use. However, appellants have not proven such facts here. Nor have appellants proven that the City capriciously established its original route without regard to its need for the land. *See City of Phoenix v. Superior Ct.,* 137 Ariz. 409, 412, 671 P.2d 387, 390 (1983) (" '[A] condemnor's determination of necessity should not be disturbed on judicial review in the absence of fraud or arbitrary or capricious conduct.' ") (quoting *City of Phoenix v. McCullough,* 24 Ariz.App. 109, 114, 536 P.2d 230, 235 (1975)).

¶ 25 To the contrary, on the question of necessity, appellants have conceded by their stipulation what they had originally contested—that the City had a need to condemn *some portion* of their land. The parties' stipulation also demonstrates the essential validity of the sewer alignment that the City was proposing from the start. The dispute boils down to whether the City engaged in bad faith overreaching by initially seeking too wide a strip along appellants' western border to accommodate a necessary sewer. Comparing the scope of the property originally sought to the scope of the property eventually acquired, we find no basis for the assertion that the City engaged in bad faith overreaching in its first complaint.

¶ 26 In the first amendment to its complaint, the City scaled back its proposal for an easement on the western border in an effort to accommodate appellants' interest in protecting their mature trees. In its second amendment, the City scaled back further, and appellants acceded to the City's need for a five-foot easement over that part of their land. The ultimate stipulation was, according to appellants, a product of "much discussion and negotiation." This is not, in our opinion, a record of arbitrary overreaching by the City, but rather one of negotiation and compromise, of good faith give and take. Finding no bad faith, we uphold the trial court's denial of appellants' common law claim to reimbursement of their fees and costs.

### ATTORNEYS' FEES UPON APPEAL

 ¶ 27 We turn last to the City's claim that it is entitled to attorneys' fees pursuant to A.R.S. § 12–349; a source of attorneys' fees for civil actions that are groundless, harassing, and in bad faith. A.R.S. § 12–349(A)(1) and (F). We have not found merit in appellants' position, but we do not find it groundless. Nor do we conclude that they brought this appeal for harassive purpose or in bad faith. The City's request for attorneys' fees is denied.

CONCURRING: RUDOLPH J. GERBER, Presiding Judge, SARAH D. GRANT, Judge.