20 P.3d 590

CITY OF CASA GRANDE, a municipal corporation of the State of Arizona, Plaintiff/Appellant/Appellee,

v.

ARIZONA WATER COMPANY, an Arizona corporation, Defendant/Appellee/Appellant.

Nos. 2 CA–CV 00–0028, 2 CA–CV 00–0128.

Court of Appeals of Arizona, Division 2, Department A.

March 13, 2001.

Irvine Van Riper, P.A., by Thomas K. Irvine and Ellen M. Van Riper, Phoenix, and Ulrich & Anger, P.C., by Paul G. Ulrich and William H. Anger, Phoenix, Attorneys for City of Casa Grande.

Bryan Cave LLP, by Steven A. Hirsch, Rodney W. Ott, and Jill Harrison, Phoenix, Attorneys for Arizona Water Company.

## OPINION

BRAMMER, Presiding Judge.

¶ 1 Plaintiff City of Casa Grande appeals from the trial court's order dismissing its condemnation action by which it sought to

acquire a portion of defendant Arizona Water Company's (AWC) public utility property in Pinal County. AWC appeals from the trial court's subsequent order denying its motion for attorney's fees. We have consolidated the two appeals. We affirm the trial court's order dismissing the City's condemnation action. We also affirm the order denying AWC attorney's fees.

### Facts and Procedural History

¶ 2 The facts in this case are undisputed. In May 1999, the City filed a condemnation action to acquire a portion of AWC's public utility facility, service area, and real and personal property. Earlier that month, the City had adopted an ordinance it contended authorized it to condemn the property, the first section of which read:

> That the City Manager and the City Attorney are hereby authorized and directed to procure professional services and to acquire and condemn said real property, [if] any; personal property, if any; system, if any; lines, if any; wells, if any; plants, [if] any; equipment, if any; franchises, if any; certificates of convenience and necessity, if any; contracts, if any; rights, if any; and other property whatsoever, if any; of Arizona Water Company located within that certain described area of Pinal County, Arizona as described in the attached Attachment "A" needed to provide water service to that area as well as any other area as determined by the City, including all rights, title and interest, if any it may have, in said certificate or certificates of convenience and necessity as above described, and to consummate the acquisition of such property under the power of eminent domain and to do all things necessary to accomplish this purpose.

Attachment A, which was entitled "Assets to be Condemned," described in detail a substantial land area and stated that these assets included "any and all personal and real property necessary to provide water service to the area to be condemned" as well as "[a]ny and all tangible and intangible rights,

privileges, and obligations of [AWC] attributable to [the] Subcontract ... between the United States Bureau of Reclamation, the Central Arizona Water Conservation District," and AWC to deliver Central Arizona Project (CAP) water to the area described.[1]

¶ 3 Arguing that the City had not first held an election pursuant to A.R.S. § 9–514, AWC contested the City's right to condemn the plant and property. Because the City had not first obtained voter approval of the acquisition, AWC claimed that the City lacked authority to proceed with the condemnation action.

¶ 4 Although AWC did not file a formal motion to dismiss the City's complaint, the trial court entered an order dismissing it, stating that "[a]n election under § 9–514 is a prerequisite to a condemnation of this property under the City Charter." The court considered the statutory scheme as a whole, interpreted the language of § 9–514 to require "voter approval of a particular project," and concluded that general authority, such as that granted by the City's charter, was insufficient to satisfy the statute.

¶ 5 AWC subsequently sought an award of its attorney's fees and costs, pursuant to A.R.S. § 11–972, which mandates awarding fees under certain circumstances if a governmental body has failed in its attempt to condemn real property. AWC also argued that it was entitled to an award of fees pursuant to both the Arizona common law theory that fees are recoverable from a governmental body that does not initiate a condemnation action in good faith and A.R.S. § 12–349(A), which requires a court to assess reasonable attorney's fees against a party if that party has brought or defended a claim "without substantial justification." In the alternative, AWC requested a hearing for additional discovery on these issues. The trial court awarded AWC $86.00 in costs, but denied its request for attorney's fees, finding that it had failed to meet the statutory requirements of § 11–972 and that there was no evidence the City had acted in "bad faith."

---

1. The legal description in the Assets to be Condemned was amended by an ordinance enacted in June 1999, which stated, "All other portions of [the original ordinance remain] in full force and effect."

### Condemnation Action

A. *Does the City's charter supersede A.R.S. § 9–514?*

¶ 6 We review de novo the interpretation of a statute. *City of Tucson v. Pima County,* 190 Ariz. 385, 949 P.2d 38 (App. 1997). In doing so, we attempt to determine and give effect to the legislature's intent by first applying the plain and unambiguous language of the statute. *Oaks v. McQuiller,* 191 Ariz. 333, 955 P.2d 971 (App.1998). However, we must also consider the statute "in the context of the entire statutory scheme of which it is a part." *Id.* at 334, 955 P.2d at 972; see also *Grant v. Board of Regents,* 133 Ariz. 527, 652 P.2d 1374 (1982). And, we strive to achieve consistency among related statutes. *Goulder v. Arizona Dep't of Transp.,* 177 Ariz. 414, 868 P.2d 997 (App. 1993).

¶ 7 As it did below, the City offers three alternative bases for its action. First, it argues that, because its charter, adopted in 1975, grants it general authority to engage in the public utility business, it was not required to hold a public election pursuant to § 9–514 on whether it could acquire the portions of AWC's assets it sought. Article XII, § 2, of the charter provides that the City "shall have the power to own and operate any public utility ... and to lease or purchase any existing utility properties used or useful to public service." It further provides that the City Council "may provide by ordinance for the establishment of such utility." Article I, § 3, of the charter generally provides that the City may acquire property by condemnation.

¶ 8 At the time the City filed the condemnation action, § 9–514 stated:

Before construction, purchase, acquisition or lease by a municipal corporation, as authorized in §§ 9–511 to 9–513, inclusive, of any plant or property or portion thereof devoted to the business of or services rendered by a public utility shall be undertaken, the construction, purchase, acquisition or lease shall be authorized by the affirmative vote of a majority of the qualified electors who are taxpayers of the municipal corporation voting at a general or spe-cial municipal election duly called and held for the purpose of voting upon the question.

Relying on A.R.S. § 9–284(A), the City argues that, because its charter "expressly empowers the City to engage in the water utility business," and because it had enacted an ordinance to do so by exercising its power of eminent domain, the charter's authority "prevails over conflicting state law" requiring an election.

¶ 9 Section 9–284(A) provides that, when charter provisions conflict with applicable state law, "the provisions of the charter shall prevail notwithstanding the conflict, and shall operate as a repeal or suspension of the law to the extent of conflict, and the law shall not thereafter be operative as to such conflict." However, § 9–284(B) states that the charter "shall be consistent with and subject to the state constitution, and not in conflict with ... general laws of the state not relating to cities." Article 13, § 2, of the Arizona Constitution clarifies the relationship between charter cities and the state by declaring that a city charter must be "consistent with, and subject to, the Constitution and the laws of the State." *See City of Tucson v. State,* 191 Ariz. 436, 438, 957 P.2d 341, 343 (App.1998) ("Our courts have historically held that general state laws pertaining to matters of statewide concern override conflicting city charters."). A charter city's ordinance on a matter not solely of local concern is invalid if it conflicts with a valid state statute on the matter, even if the ordinance is more restrictive than the state law. *City of Tucson v. Consumers for Retail Choice Sponsored by Wal Mart,* 197 Ariz. 600, 5 P.3d 934 (App.2000). If the local and state-wide laws do not conflict, that is, if they can peacefully coexist, the local ordinance "may nevertheless be invalid if the state has appropriated the field." Id. at ¶ 7, 5 P.3d at ¶ 7; see also *Union Transportes de Nogales v. City of Nogales,* 195 Ariz. 166, 985 P.2d 1025 (1999).

¶ 10 The City argues that, because "the decision to provide water service is strictly a local matter," its ordinance is valid. AWC argues that, because the City was exercising its power of eminent domain—which,

AWC argues, is a matter of statewide concern [2]—to acquire its property, the ordinance is invalid. Neither position adequately identifies the true issue before us, the acquisition by a municipality of a portion of the assets of an existing public service corporation. Our first inquiry, which we answer on a case-by-case basis, is whether such an acquisition is a matter solely of local concern. *See Strode v. Sullivan,* 72 Ariz. 360, 236 P.2d 48 (1951). A subject matter may be of statewide concern if uniform regulation is appropriate. *See Consumers for Retail Choice; see also U.S. West Communications, Inc., v. City of Longmont,* 948 P.2d 509 (Colo.1997).

■ ¶ 11 The portion of AWC the City seeks, once acquired, would no longer be subject to the jurisdiction of the Arizona Corporation Commission (ACC), and the customers in this former portion of AWC's service area could thereby lose several statutory protections.[3] *See* Ariz. Const. art. 15, §§ 2, 3 (municipal corporations excluded from definition of public service corporations, which are subject to regulation and supervision by ACC under the Arizona Constitution and A.R.S. § 40–202(A)) [4]; *see also City of Phoenix v. Wright,* 52 Ariz. 227, 80 P.2d 390 (1938). Because regulation of municipally owned utilities is not within the purview of the ACC, recourse for their customers is through the municipal electoral process—a very different method of registering concerns with utility rates or service from that of the ACC's administrative procedures to which public service corporations are subject. *See City of Phoenix.* The comprehensive statutory scheme prescribing ACC regulation of public service corporations plainly indicates the legislature's recognition that the matter is of statewide importance and controlled appropriately by the ACC. *Cf. Mayor of Prescott v. Randall,* 67 Ariz. 369, 375, 196 P.2d 477, 481 (1948) ("complete and comprehensive code" governing liquor licensing evinces legislative intent for statewide control over subject matter). Clearly, the loss of these statutory benefits, which would be the consequence for these AWC customers if the City acquired this portion of AWC, is no less a matter of statewide concern.

■ ¶ 12 Moreover, we believe the plain wording of § 9–514 indicates both an implicit legislative recognition of the need for uniform regulation of its subject matter, municipal acquisition of an existing utility, and an implicit determination that the matter is of statewide importance. *See Clayton v. State,* 38 Ariz. 135, 149, 297 P. 1037, 1042 (1931) (invalidating city ordinance relating to driving under the influence of alcohol because "the legislature in the Highway Code has determined that the sobriety ... of a motor vehicle driver on the public highways of the state is a matter of state-wide policy and concern, and that ... the rule with reference to such drivers should be uniform throughout the state"). The statute requires voter approval before a city may acquire a utility, but that requirement would be eviscerated if a city could satisfy it simply by enacting an ordinance pursuant to a charter provision imposing no such requirement. Therefore, we conclude that the City's attempted acquisition of a portion of AWC was not a matter solely of local concern but, rather, a matter of both local and statewide concern. Accordingly, the ordinance the City enacted to accomplish the acquisition may not conflict with § 9–514. *Consumers for Retail Choice.*

---

**2.** *See City of Mesa v. Smith Co. of Arizona, Inc.,* 169 Ariz. 42, 816 P.2d 939 (App.1991).

**3.** Under the statutory scheme governing the ACC's regulation of public service corporations, aggrieved parties have extensive rights to seek administrative remedies, including "investigations, hearings and appeals," into whether the public service corporation has violated the law or a rule or order of the ACC. *See, e.g.,* A.R.S. § 40–246 and Ariz. Admin. Code R14–2–411 and R14–3–101 through R14–3–113; *see also* A.R.S. §§ 40–361 through 40–375 (requiring, inter alia, rates charged by public service corporation to be "just and reasonable," filing of rate schedules with ACC, and notice before rates are increased); A.R.S. § 40–250 (providing for a hearing before rates are increased) and Ariz. Admin. Code R14–2–105; A.R.S. §§ 40–461 through 40–464 (establishing residential utility consumer office and board to hear consumer complaints); A.R.S. § 40–110 (establishing consumer services section within ACC utilities division to provide information and investigate complaints).

**4.** For specific purposes that are inapplicable to this situation, municipal corporations are subject to limited ACC jurisdiction. *See, e.g.,* A.R.S. § 40–360.22 (underground facilities).

¶ 13 We must next determine whether the City's ordinance conflicts with § 9–514. The City argues that, based on its "existing charter authority," it was "vest[ed] ... with express authority to condemn the property of AWC without first conducting an election." Section 9–514, however, expressly states that a city must first obtain voter approval before acquiring a public utility. Because the City charter purports to enable the City to pursue the AWC acquisition without a vote required by state law, we therefore find that the ordinance enacted pursuant to its authority "conflict[s] with or attempt[s] to overrule" the requirements of § 9–514. *Consumers for Retail Choice*, 197 Ariz. 600, ¶ 10, 5 P.3d 934, ¶ 10. Consequently, we conclude that the ordinance, without more, cannot authorize this acquisition of AWC's property. In light of this conclusion, we need not also determine, as AWC suggests, whether the legislature has otherwise preempted the field. *See Union Transportes*; *Consumers for Retail Choice*.

B. *Is this condemnation action subject to the requirements of § 9–514?*

¶ 14 The City alternatively argues that, even if § 9–514 generally applies, the statute is inapplicable to this situation because it undertook the condemnation under the authority of either A.R.S. § 9–515 or § 9–522, neither of which, it contends, is subject to the requirements of § 9–514. Section 9–515 states, in pertinent part:

A. When a municipal corporation and the residents thereof are being served under an existing franchise by a public utility, the municipal corporation, before constructing, purchasing, acquiring or leasing, in whole or in part, a plant or property engaged in the business of supplying services rendered by such public utility, shall first purchase and take over the property and plant of the public utility.

¶ 15 The City contends that the plain language of § 9–514, which, at the time the condemnation action was filed, applied to the acquisition of a utility "as authorized in [A.R.S.] §§ 9–511 to 9–513, inclusive," limits its applicability to condemnation proceedings undertaken by authority only of those statutes. Therefore, the City argues, because it sought to condemn the utility under § 9–515, it was not subject to the requirements of § 9–514. However, the City's amended complaint does not cite the source of its authority to act in the limited manner it now suggests. The complaint states that the action is brought, inter alia, under the provisions of "Title 9, Chapter 5, Articles 2 and 3," which are comprised of A.R.S. §§ 9–511 through 9–540. Furthermore, in looking at the statutory scheme as a whole, we find nothing to suggest that the legislature intended §§ 9–514 and 9–515 to operate independently of each other. Rather, because they relate to the same subject matter, we construe them in concert. *Goulder.*

¶ 16 Sections 9–514 and 9–515 were enacted together in 1933, when the sections that are now §§ 9–511 through 9–513 were amended. 1933 Ariz. Sess. Laws, ch. 77, §§ 1–3. Both sections describe the affirmative duty a city has before it may acquire a utility: § 9–514 requires a city to obtain voter approval before building, buying, leasing, or acquiring a public utility, and § 9–515 requires a city to first "purchase and take over" an existing utility serving its citizens before it may construct or acquire one of its own. We find the most harmonious reading of the statutes to be that § 9–514 imposes an election and voter approval requirement whenever a city wants to acquire a utility. If the area to which a city seeks to provide utility service is already being served by a utility, § 9–515 requires the city to acquire the utility, perhaps by eminent domain, and pay just compensation for the acquisition. Nothing in § 9–515 reflects a legislative intent to exempt the situation it describes from the requirements of § 9–514. Rather, § 9–515 merely details a city's additional obligations under the circumstances it describes.

¶ 17 We also find unavailing the argument the City makes in reliance on *Sende Vista Water Co., Inc. v. City of Phoenix*, 127 Ariz. 42, 617 P.2d 1158 (App.1980), that § 9–522 "provides independent authority for the City to acquire a portion of AWC, without first conducting an authorizing election pursuant to A.R.S. § 9–514." Section 9–522 states, in pertinent part:

A. In addition to its other powers, a municipality may:

1. Subject to the requirements and restrictions of §§ 9–515 through 9–518, within or without its corporate limits, construct, improve, reconstruct, extend, operate, maintain and acquire, by gift, purchase or the exercise of the right of eminent domain, a utility undertaking or part thereof, and acquire in like manner land, rights in land or water rights in connection therewith.

We find *Sende Vista*, and the supreme court case it relied on, *City of Scottsdale v. Municipal Court of Tempe*, 90 Ariz. 393, 368 P.2d 637 (1962), readily distinguishable from this case.

¶ 18 We agree with Division One's analysis of *Sende Vista* and *City of Scottsdale*, and the statutes upon which they were based, in *Moore v. City of Page*, 148 Ariz. 151, 713 P.2d 813 (App.1986). The court distinguished both cases, finding that they involved "situations in which municipalities with existing utilities sought to expand operations by acquiring utilities which were operating in areas [the] city wished to serve." *Id.* at 162, 713 P.2d at 824. In *Moore*, as in this case, the city was seeking to establish initial utility service. Thus, for the first time, Division One addressed in *Moore* the question of whether Title 9, chapter 5, article 3, which includes § 9–522, is applicable to that situation. The court held that only if the city were seeking to extend or improve a utility it already owned would the provisions of article 3 apply. *See Moore* (because of overall purpose of article 3, applicability of § 9–522 construed as limited to such situations despite its apparently contradictory language).

¶ 19 Both *Sende Vista* and *City of Scottsdale* were cases in which cities sought to *extend their extant utility functions.* Casa Grande, on the other hand, sought to begin its utility function by acquiring some of AWC's assets—an action governed instead by Title 9, chapter 5, article 2, which includes § 9–514. *See Moore.* The City's reliance on *Sende Vista* is therefore unavailing.

C. *Did either the 1916 or 1975 election satisfy the § 9–514 requirements?*

¶ 20 Finally, the City argues that, even if it was required to obtain voter approval before condemning AWC's property, the requirement had been satisfied by one of two prior public votes: the first conducted in 1916 when voters authorized the then town to sell bonds to construct several utilities, and the second in 1975 when voters approved the charter to incorporate the town as a city. The City relies on *Desert Waters, Inc. v. Superior Court*, 91 Ariz. 163, 370 P.2d 652 (1962), for the proposition that "it is not necessary for a city to conduct an election each and every time it seeks to acquire public utility property, so long as it has existing authority either by a charter provision or other publicly voted upon measure permitting the city to engage in that utility business." The City's reliance on that case, however, is misplaced. The court in *Desert Waters* specifically stated that it was not construing § 9–514, which it found inapplicable because the city had undertaken the condemnation after complying with the election provision of chapter 5, article 3. *Desert Waters*, therefore, does not support the City's assertion that it has satisfied the requirements of § 9–514.

¶ 21 The City also relies on *Graham County Electric Cooperative, Inc. v. Town of Safford*, 95 Ariz. 174, 388 P.2d 169 (1963), to support its contention that we should "look to the extent of the voters' [earlier] authorization to determine whether [it has] existing authority to enter the utility business." In *Graham County*, our supreme court held that a vote by the electorate approving the acquisition of a portion of a utility's facilities located within town limits did not "impl[y] or import[ ] future authority in the [town] to purchase further [utility] facilities either within or without the town limits in whole or in part. In order that [the town] purchase other facilities it must be authorized at an election held in conformity with [§ 9–514]." *Id.* at 184, 388 P.2d at 176. *Graham County* does not support the City's assertion that its general authority to acquire a utility is sufficient voter authorization to satisfy the plain

language of § 9–514. Indeed, it supports the contrary position.

¶ 22 When a statute's language is clear, we need not look beyond its plain language to determine its meaning. *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 872 P.2d 668 (1994); *Oaks.* We agree with the trial court that the "common sense meaning of the language [of § 9–514] calls for voter approval of a particular project, not general authority." The town council minutes from the meeting setting the 1916 election state that its purpose was to determine whether the town should be allowed to issue and sell bonds "for the purpose of installing a Town water plant, a Town electric light and power plant and a Town ice plant." According to the statement on the official ballot, the special election in 1975 was called for the purpose of voting on the following question: "Shall the charter proposed by the board of freeholders be ratified?" The current question is whether the City has authority to acquire AWC's property for the purpose of operating a utility. Construing the voter approval the City obtained at either earlier election as sufficient to satisfy the requirements of § 9–514 would compel us to torture the meaning of the language "voting upon the question." This we decline to do. Section 9–514 requires the City to obtain voter approval at an election "duly called and held" for the purpose of voting on that specific question before commencing an action to acquire AWC's property.[5] The trial court's order dismissing the condemnation action is therefore affirmed.

### Attorney's Fees

A. *Is AWC entitled to an award of reasonable attorney's fees under A.R.S. § 11–972?*

¶ 23 After the trial court entered judgment in its favor in the condemnation action, AWC sought to recover its attorney's fees and costs. AWC first argued it was entitled to an award of attorney's fees pursuant to § 11–972(A), which provides:

The court having jurisdiction of a proceeding instituted by an acquiring agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in such real property, such sum as will reimburse such owner for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees actually incurred because of the condemnation proceedings if either of the following occur:

1. The final judgment is that the acquiring agency cannot acquire the real property by condemnation.

2. The proceeding is abandoned by the acquiring agency.

Section 11–974(A), A.R.S., however, limits the applicability of § 11–972· only to those circumstances in which "real property or improvements thereon are acquired or are to be acquired for a project for which federal financial assistance is to defray all, or part of, the costs of such project." The trial court found that the statute did not apply, both because the condemnation action was not one to condemn real property and because there was no evidence the City would have used federal financial assistance to acquire AWC's property.

¶ 24 Because we agree with the trial court that AWC failed to prove that the City would have used federal financial assistance to acquire its property, we conclude that AWC was not entitled to attorney's fees under § 11–972. "Federal financial assistance" is defined as "a grant, loan or contribution in any form whatsoever provided by the United States to an acquiring agency." A.R.S. § 11–961(7). The City argues, as it did below, that there was "no evidence that [the City] proposed to use any federal funds to acquire AWC's property," but rather, "the acquisition was to be solely funded by municipal funds." Claiming that the City has continually refused to explain how it planned to finance its acquisition of AWC's property, AWC relies on one of the City's stated reasons for seeking to acquire the property—it

---

5. *See* 1965 Op. Ariz. Att'y Gen. 65–39–L (television translator system granted ACC certificate of public convenience and necessity as a public

utility may be acquired by city only after voter approval obtained pursuant to § 9–514).

wanted to distribute the area's CAP allocation more efficiently than it claimed had been AWC's practice—as evidence of the City's intent to utilize federal financial assistance for the condemnation.[6]

¶ 25 We agree with the trial court's implicit conclusion that the fact the City would have acquired the area's CAP water allocation was irrelevant to the issue of how it planned to finance the acquisition. AWC's argument that federal funds would have been used for the project is based on mere speculation. *Salaz v. City of Tucson*, 157 Ariz. 251, 756 P.2d 348 (App.1988). And, we construe § 11–972 narrowly. *See United States v. 4.18 Acres of Land*, 542 F.2d 786, 789 (9th Cir.1976) (federal statute with nearly identical wording construed as "a narrow exception to the general rule of nonrecovery of litigation expenses").

■ ¶ 26 At oral argument, AWC contended that the trial court had improperly denied it an opportunity to discover the City's funding source and that, because the court ruled in its favor on the merits prior to discovery on that issue, it should be allowed to pursue discovery and have a hearing on its entitlement to attorney's fees. Generally, a trial court has broad discretion in deciding discovery issues, and we will not disturb its rulings absent a showing of an abuse of that discretion. *Perguson v. Tamis*, 188 Ariz. 425, 937 P.2d 347 (App.1996). On the record before us, we cannot say that the trial court abused its discretion in denying AWC's request for a hearing and for additional discovery on whether the City planned to use federal funds to acquire its property or on whether the City had acted in bad faith. *See Lenze v. Synthes, Ltd.*, 160 Ariz. 302, 772 P.2d 1155 (App.1989) (denial of request for evidentiary hearing reviewed for abuse of discretion). Because AWC failed to make the showing necessary to contradict the City's assertion that it did not plan to use

federal funds to acquire AWC's property, the trial court correctly denied attorney's fees under § 11–972.[7] *Salaz.*

**B.** *Did the City act in bad faith in filing condemnation proceedings against AWC?*

■ ¶ 27 Citing both statutory and common law theories of recovery, AWC also claimed it was entitled to an award of attorney's fees on the ground that the City had acted in bad faith by "bringing [the] action when [it] knew it lacked authority" to do so, requesting a hearing on the issue. AWC relied on § 12–349(A), ·which mandates an award of attorney's fees if a party has brought a claim "without substantial justification," defined as a claim or defense that "constitutes harassment, is groundless and is not made in good faith." § 12–349(F). All three elements must be proven by a preponderance of the evidence. *Fisher v. National Gen. Ins. Co.*, 192 Ariz. 366, 965 P.2d 100 (App.1998). We review the trial court's findings of fact under a clearly erroneous standard, but its application of the statute is a question of law that we review de novo. *Id.*; *see also Phoenix Newspapers Inc. v. Department of Corrections*, 188 Ariz. 237, 934 P.2d 801 (App.1997).

¶ 28 AWC argued that it was also entitled to attorney's fees under the common law rule that "the condemning party shall have acted in good faith both in instituting and abandoning the proceedings." *State ex rel. Morrison v. Helm*, 86 Ariz. 275, 282, 345 P.2d 202, 206–07 (1959); *see also City of Sedona v. Devol*, 196 Ariz. 178, 993 P.2d 1142 (App.1999). As Division One of this court has observed, the relevant case law has not defined what constitutes bad faith on the part of a condemning party, but rather, only "offers illustration of that standard as the courts have applied it case by case." *City of Sedona*, 196 Ariz. 178, ¶ 23, 993 P.2d 1142, ¶ 23.

---

6. In making these assertions, AWC refers to the City's responses to its interrogatories. Those documents are not part of the record on appeal, although they were apparently intended to be attached to AWC's motion for attorney's fees. Because the City does not dispute either of AWC's contentions, we accept them as true for purposes of this appeal.

7. Having concluded that the trial court correctly denied fees because AWC did not establish that the acquisition would have been funded in any way by federal financial assistance, we need not consider whether the City sought to acquire "real property."

¶ 29 As justification for recovering fees under either § 12–349 or the common law, AWC argued below that, because the City had held a special election in 1990 for the purpose of deciding whether it should enter into the water utility business, the City "knew that state law required it to hold an election." AWC further argued that, because the voters had rejected the ballot proposition in 1990, the City's attempt to condemn AWC's property nearly ten years later without first holding another election was clearly "[i]n disregard of both the law and the will of its citizens." The City responded, however, that the "outcome of the 1990 election is inconsequential, because that election involved the issuance of revenue bonds, which clearly requires an election under A.R.S. § 9–523," and the City did not plan to fund this acquisition of AWC's property by issuing bonds. In denying fees on this ground, the court stated only that, because the decision in AWC's favor on the condemnation action was "a close call[,] ... the conclusion is inescapable that there could be no finding of bad faith."

¶ 30 The judge who ruled on AWC's fee request was not the same judge who had dismissed the condemnation action. The judge who dismissed the City's action had stated that the case was "a question of first impression" and that "[t]he statutes and prior case law are not a model of clarity." That judge also found that the "common sense meaning of the language [of § 9–514] calls for voter approval of a particular project, not general authority." As illustrated by both the trial court's lengthy discussion preceding its order dismissing the condemnation action and our own discussion herein, the position asserted by the City was fairly debatable. *See Lynch v. Lynch,* 164 Ariz. 127, 133, 791 P.2d 653, 659 (App.1990) (court should administer § 12–349 cautiously to avoid discouraging "assertion of fairly debatable positions").

¶ 31 Accordingly, although the City's action was unsuccessful, we agree with the trial court's implicit conclusion that AWC failed to prove by a preponderance of the evidence that the City had acted in bad faith. *Fisher.* We therefore find no error in the trial court's

denial of attorney's fees under § 12–349. We likewise find no error in the trial court's implicit conclusion that this was not an appropriate case for awarding attorney's fees under the common law. *See City of Sedona.* Therefore, the order denying AWC attorney's fees and awarding it $86.00 in costs is affirmed.

¶ 32 AWC has requested attorney's fees on appeal on the same grounds it requested fees below. Because AWC did not establish that it is entitled to attorney's fees on any of those grounds, we deny its request.

CONCURRING: M. JAN FLÓREZ, Judge, JOHN PELANDER, Judge.