IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

NOV 25 2011

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | 2 CA-CV 2011-0088 |
| RICK C. DOWNING, | ) | DEPARTMENT A |
| | ) | |
| Petitioner/Appellee, | ) | O P I N I O N |
| | ) | |
| v. | ) | |
| | ) | |
| LA VANCHA DOWNING, | ) | |
| | ) | |
| Respondent/Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. D20042403

Honorable Karen Nygaard, Judge Pro Tempore

AFFIRMED

Law Office of Michael H. Gottesman
  By Michael H. Gottesman                           Tucson
                   Attorneys for Petitioner/Appellee

La Vancha Downing                                Tucson
                                 In Propria Persona

B R A M M E R, Judge.

¶1       La Vancha Downing appeals from the trial court's ruling reducing her former husband's, Rick Downing, spousal maintenance obligation to one hundred dollars per month. She contends the court erred in interpreting A.R.S. § 25-530 and suggests we

may reconcile § 25-530 with the spousal maintenance factors in A.R.S. § 25-319(B)(4) and (5) to reach a different result. She also argues the court erred in denying her request for attorney fees. We affirm.

## Factual and Procedural Background

¶2 We view the evidence in the light most favorable to upholding the trial court's determination. *See Leathers v. Leathers*, 216 Ariz. 374, ¶ 9, 166 P.3d 929, 931 (App. 2007). La Vancha and Rick's nineteen-year marriage was dissolved in 2005. The dissolution decree ordered Rick to pay monthly spousal maintenance of $1,000 for sixty months. In March 2010, La Vancha filed a petition for modification of spousal maintenance alleging a substantial and continuing change of circumstances since the entry of the decree. The trial court modified the spousal maintenance award to $500 per month until La Vancha's remarriage or the death of either party.

¶3 In December 2010, Rick filed a motion to terminate spousal maintenance pursuant to § 25-530, which had been enacted earlier that year and prohibits a trial court from considering some federal disability benefits when making spousal maintenance determinations. At the hearing on the motion, the parties agreed Rick has a service-related disability and receives, in addition to social security benefits, disability payments pursuant to U.S.C. title 38, chapter 11.[1] The trial court determined it was precluded by statute from considering Rick's title 38 disability benefits, and found the difference in the

---

[1] We note this fact distinguishes the issue here from that addressed in *In re Marriage of Priessman*, No. 2 CA-CV 2011-0071, 2011 WL 5829585 (Ariz. Ct. App. Nov. 18, 2011). There we concluded § 25-530 does not encompass disability benefits not awarded pursuant to title 38. *Id.* ¶ 10.

2

parties' incomes otherwise to be two hundred dollars per month. It modified Rick's obligation to pay La Vancha spousal maintenance to half that amount—one hundred dollars per month. The court denied La Vancha's request for attorney fees. This appeal followed.

**Discussion**

¶4 La Vancha challenges the trial court's application of § 25-530 in conjunction with § 25-319(B). Section 25-530 states: "In determining whether to award spousal maintenance or the amount of any award of spousal maintenance, the court shall not consider any federal disability benefits awarded to the other spouse for service-connected disabilities pursuant to 38 United States Code chapter 11." Section 25-319 states in relevant part:

> **B.** The maintenance order shall be in an amount and for a period of time as the court deems just, without regard to marital misconduct, and after considering all relevant factors, including:
>
> . . . .
>
> 4. The ability of the spouse from whom maintenance is sought to meet that spouse's needs while meeting those of the spouse seeking maintenance.
>
> 5. The comparative financial resources of the spouses, including their comparative earning abilities in the labor market.

¶5 "'The primary rule of statutory construction is to find and give effect to legislative intent.'" *Anderson v. Ariz. Game & Fish Dep't*, 226 Ariz. 39, ¶ 7, 243 P.3d 1021, 1023 (App. 2010), *quoting Mail Boxes, Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz.

3

119, 121, 888 P.2d 777, 779 (1995). In doing so, we look to the plain language of the statute as the best indicator of that intent. *Id.* If the statute's language is unambiguous, "we give effect to it and do not employ other rules of statutory construction." *Id.* We also consider the statute "'in the context of the entire statutory scheme of which it is a part,'" striving to "achieve consistency among related statutes." *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, ¶ 6, 20 P.3d 590, 593 (App. 2001), *quoting Oaks v. McQuiller*, 191 Ariz. 333, ¶ 5, 955 P.2d 971, 972 (App. 1998). We review the interpretation and application of statutes de novo. *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, ¶ 49, 180 P.3d 986, 1001 (App. 2008).

¶6 The trial court applied the plain language of § 25-530 and modified the spousal maintenance award after considering the difference in La Vancha's monthly income and Rick's monthly income, excluding from the latter his title 38 benefits. La Vancha, however, suggests § 25-530 merely prohibits courts from using title 38 benefits to fund a spousal maintenance award. She argues § 25-530 does not permit a court to "pretend" a spouse does not have money that he or she in fact has because "[a] lie cannot be the basis of just decision-making." She contends the court should have found Rick's title 38 benefits fully provided for his needs under § 25-319(B)(4) and thus the rest of his income was "completely allocable" and available to fund a spousal maintenance award.

¶7 But La Vancha's interpretation of § 25-530 is inconsistent with its plain language because its terms are clear and unambiguous and can be read consistently with § 25-319(B)(4) and (5). Section 25-530 provides a blanket prohibition on considering title 38 benefits when determining not only whether to award spousal maintenance but

4

also how much to award. It is not limited in the way La Vancha suggests. Had the trial court found Rick's needs met under § 25-319(B)(4) by his title 38 benefits, the court necessarily would have "consider[ed]" those benefits in violation of the prohibition on doing so in § 25-530. The mandate of § 25-530 as applied to § 25-319(B)(4) and (5) is clear—when evaluating "[t]he ability of the spouse from whom maintenance is sought to meet that spouse's needs" and "[t]he comparative financial resources of the spouses," the court shall not take into account, regard, or "consider" the portion of that spouse's income derived from title 38 benefits. *See The American Heritage Dictionary* 313 (2d college ed. 1982) ("consider" means "[t]o take into account" or "bear in mind," "[t]o think about carefully and seriously," "[t]o regard as"). Had the legislature intended the meaning proffered by La Vancha it clearly could have prohibited courts from funding a spousal maintenance award from title 38 benefits, and we assume "the legislature has said what it means." *See Hughes v. Jorgenson*, 203 Ariz. 71, ¶ 11, 50 P.3d 821, 823 (2002).

¶8        La Vancha also argues if a court ignores title 38 benefits pursuant to § 25-530, the statute also requires the court to ignore the fact of a service-connected disability reducing the spouse's earning capacity. This, she posits, requires courts "to pretend [spouses receiving title 38 benefits] are completely able to earn a full living through gainful employment" when evaluating the spouses' comparative earning abilities pursuant to § 25-319(B)(5). Her interpretation, however, again is inconsistent with the plain language of § 25-530, which mandates only that courts "shall not consider any federal disability benefits awarded," but does not mandate that courts ignore the fact a spouse is disabled. We will not read absent language into § 25-530; indeed to do so

5

would violate the rules of statutory construction. *See Arpaio v. Citizen Publ'g Co.*, 221 Ariz. 130, ¶ 9, 211 P.3d 8, 11 (App. 2008). Therefore, §§ 25-530 and 25-319(B)(5) can be read together consistently—a court can consider a spouse's relative earning capacity and disability without considering compensation benefits awarded for that disability pursuant to title 38. *See City of Casa Grande*, 199 Ariz. 547, ¶ 6, 20 P.3d at 593 (we interpret related statutes to achieve consistency).

¶9        Additionally, La Vancha notes the legislative history of § 25-530 supports her interpretation and she presumes the legislature's purpose in enacting the statute was to recognize federal limits on title 38 benefits. However, because the statute's language is unambiguous, we do not turn to legislative history to interpret the statute and determine legislative intent. *See Anderson*, 226 Ariz. 39, ¶ 8, 243 P.3d at 1023. La Vancha also asks us to interpret § 25-530 in light of the "federal statutory purpose" of title 38 benefits. But our task when determining the meaning of a statute is to give effect to our legislature's intent; we need not analyze another statutory scheme when the statute's plain language is clear. *See id.* ¶ 7.

¶10        In the trial court, La Vancha argued that potential, unintended consequences flowed from the court's application of § 25-530. She noted that if her earnings were greater Rick could seek spousal maintenance from her, and the court would be required to ignore his title 38 income even though his monthly income is more than

6

sufficient to meet his needs. Because these matters are inapplicable to her circumstances, and are hypothetical, we do not address them.[2]

¶11        La Vancha also contends § 25-530 discriminates on the basis of gender in violation of the equal protection clause of the Fourteenth Amendment, an issue she asserts her proffered interpretation avoids. She claims "the great majority of spouses seeking spousal maintenance are women" and, therefore, § 25-530 was enacted against a specific class composed predominately of women. She further argues "women are denied by law any combat role and are a substantial minority within the armed forces"; thus the "great majority of spouses with service-connected injuries resulting in [title 38] benefits awards are men." Therefore, she concludes, § 25-530 invidiously discriminates in favor of men. But La Vancha's argument is unavailing because it is grounded on unsupported assumptions, which cannot serve as a basis for us to conclude the statute is unconstitutional. *See* Ariz. R. Civ. App. P. 13(a)(6) (appellate brief argument shall contain "citations to the authorities, statutes and parts of the record relied on"); *Polanco v. Indus. Comm'n*, 214 Ariz. 489, n.2, 154 P.3d 391, 393-94 n.2 (App. 2007) (appellant's failure to develop and support argument waives issue on appeal).

¶12        We conclude the trial court properly excluded the title 38 benefits from its consideration of the factors in § 25-319(B).[3] By its plain language, § 25-530 requires

_____

[2]We are not unmindful of the troublesome fiction created by § 25-530 requiring a court, as La Vancha points out, to "pretend" title 38 funds do not exist for the purpose of determining a spouse's income and his or her ability to pay, or need for, spousal maintenance. The legislature, however, has made clear this is precisely what the court is to do. Until the statute's clear language is modified in some way, it is the court's responsibility to follow the law as written.

7

courts to exclude from consideration any benefits received pursuant to title 38, thus determining whether to award spousal maintenance and how much to award based solely on the spouse's income from non-title 38 sources.

**Disposition**

¶13        For the foregoing reasons, we affirm.


                                    /s/ *J. William Brammer, Jr.*
                                    J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge


/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

---

[3]La Vancha also argues the trial court should have awarded her attorney fees because it incorrectly ruled in Rick's favor and asks us to "reverse the [court's] failure to award [her] attorney fees" and direct it on remand to reconsider. Because we determine the court did not err, we need not address this argument.